# STATE EX REL. JOHNSON et al. v. THOMAS ELY et al.

(137 N. W. 834.)

**Mandamus — nature of writ — when issued.**

1. Mandamus is not a writ of right, and will not be granted to compel the performance of an act when no beneficial result would be attained by its performance.

**Mandamus — discretionary writ — evidence.**

2. Mandamus as a general rule is a discretionary writ, and when application is made to the trial court to issue mandamus, that court may take testimony to aid it in determining how its discretion should be exercised.

**Mandamus — discretion — evidence.**

3. It is not an abuse of discretion to deny a writ of mandamus when it is shown that its issuance would avail nothing to the relators.

**Elections — establishment of voting precincts.**

4. The county commissioners of Ward county, when what is now Burke county was a part thereof, established the voting precincts and designated the polling places in certain townships now in Burke county. On the organization of Burke county, the commissioners thereof failed to re-establish voting precincts or designate polling place. *Held,* that the precincts and polling places established by the commissioners of Ward county remain such until the commissioners of Burke county act thereon.

**Elections — establishment of voting precincts — voting at different place.**

5. In accordance with Elvick v. Groves, 17 N. D. 561, 118 N. W. 228, it is *held* that where a voting place is duly established by the county commissioners, an election held at another place a considerable distance therefrom in the absence of special reasons, is unauthorized, and the returns thereof should not be canvassed.

**Elections — establishment of voting precincts — voting at different place — mandamus — canvassing boards.**

6. In each of the precincts involved in this proceeding the commissioners of Ward county in 1908 established the voting places at "the usual place." The record shows that, at the next election after such establishment, the voting was done at places near the center of the townships or precincts. A motion of relators and a demurrer filed to the return of the respondents both admit that the election of 1910 was not held at the place designated. The evidence shows that it was held at places several miles distant, on the extreme boundaries of the precincts; and it is held that, in the absence of any conflict in the evidence, the trial court did not abuse its discretion in declining to issue its writ of mandamus to direct the canvassing board to canvass the votes alleged to have been cast at such illegal polling places, and which such board had refused to include in its canvass of votes cast at the 1910 election.

**Elections — canvassing boards — contest of election — mandamus — discretion.**

7. Members of a canvassing board are presumed to know the locality of the designated voting places, and to take notice of the geography of the townships in their jurisdiction, and when returns clearly indicate that an election was held at a point distant from the designated place such board is justified in declining to canvass such returns, in the absence of special considerations. The trial court found, on inquiring into the facts, and on the demurrer and motion above referred to, in substance that on a contest of the election there would be no justification for changing the certificate issued by the canvassing board, and declined to issue its writ of mandate. *Held*, that this was not an abuse of its discretionary power.

**Elections — change of voting place.**

8. It may be conceded that a minority rule invoked by relators differs from the rule established in this court; but even if such minority rule were to be followed it would avail relators nothing, as under it the burden was on them to show that the change was made in good faith, without fraud, and with no intent to injure the cause of respondents, and that in fact no one was deprived of his vote by reason of the unauthorized change in the voting places. Relators showed none of these things.

Opinion filed September 3, 1912    Rehearing denied September 30, 1912.

Appeal by relators from an order of the District Court for Burke County, *Templeton,* J., refusing to issue a writ of mandamus to compel defendants to canvass the votes of omitted precincts.

Affirmed.

Burke county was organized in July, 1910, from territory theretofore a part of Ward county. At the general election held November 8, 1910, the question of a permanent county seat was submitted to the electors. The defendants constitute the canvassing board of Burke county, and they duly convened as such after such election, as required by law. The vote on the county-seat question, as canvassed by them, gave 440 votes for Lignite and 783 for Bowbells; but such result was reached by the omission, on the part of defendants, to canvass any vote from certain precincts which, if entitled to be canvassed, would change the result. The relators, who are residents, citizens, electors, and taxpayers of the county of Burke, thereupon instituted this proceeding for the purpose of securing a writ of mandamus from the district court directed to defendants as the canvassing board, commanding them to canvass the votes of the omitted precincts and include them in their computation, and to issue a certificate of election and a notice declaring Lignite to be the county seat of Burke county.

We need not give in detail the allegations of the petition. To such petition the defendants answered by general denial and admissions of certain paragraphs, and setting forth their reasons for not canvassing the votes of the omitted precincts. Briefly stated, paragraph 4 of such answer, which is the only one we need refer to specifically, alleges that what purported to be returns of such precincts were rejected because the village of Powers Lake, one of them, was organized as a village, and had never been designated as an election precinct, and no polling place ever designated as required by law; that as to the other townships, nine in number, they had never been established as election precincts; that in 1908, when said townships were a part of Ward county, the Ward county commissioners had designated the polling places therein; that the votes alleged to have been cast on the county-seat question at the 1910 election were not cast at the places designated as polling places, but were cast at places far distant therefrom,—in most cases nearly 4 miles, and in each, more than a mile; that the designation of the poll-

ing places made by the Ward county commissioners was "the usual voting place;" that the votes alleged by relators to have been cast on the county-seat location were not cast at the usual voting places in such precincts, but on the contrary were cast at unauthorized and undesignated voting places, distant from the usual voting place 3 or more miles, stating what the usual voting place was and the place where the votes in question were cast; with the exception of one township, where it was alleged that no usual voting place existed, that the voters removed it from year to year to places 3 or 4 miles distant from each other.

Upon the trial the relators objected to the sufficiency of the return, on the ground that it set forth no facts sufficient to warrant, if true, the refusal of the writ prayed for, and moved the court that the writ issue by reason of the insufficiency of the showing made upon the return. This objection and motion were overruled and exception taken. Whereupon records of the county commissioners of Ward county were received in evidence, over objection, showing the organization of the respective townships, with the exception of Powers Lake, which it was afterwards stipulated had never been established as a precinct. Whereupon testimony was received, showing that the board of county commissioners of Burke county had never established election precincts or voting places as required by § 607, Revised Codes 1905, or at all. That section reads as follows:

"The board of county commissioners of each county in the state shall, at its first session after the taking effect of this section, divide its county into election precincts and establish the boundaries of the same, if it has not heretofore done so. . . . Such board of commissioners shall designate one voting place in each precinct. . . ."

Evidence was received as to the custody of the records and the alleged returns from the township in question. It was also stipulated that a certificate of election had theretofore been issued by the canvassing board of Burke county, certifying the election of Bowbells as the county seat. It was shown beyond controversy that in March, 1908, while these townships were included in Ward county, the board of county commissioners had designated the voting places and each thereof as at "the usual voting place;" that at the next general election after such designation the voting was done at a place near the center of each of such precincts or townships; that the election in 1910 was held with-

out any further action on the part of any board of county commission-
ers, at a place distant from such voting place of 1908 generally from
3 or 4 miles,—we believe in one case a mile and a quarter distant.

After the evidence was all submitted, and after an adjournment from
the 16th day of December, 1910, to February 8, 1911, relators inter-
posed a general demurrer to the facts set out in paragraph 4 of re-
spondent's answer or return. No evidence was thereafter submitted,
and no evidence was received during the hearing in conflict with that
which we have stated.

The court made findings of fact to the effect that Powers Lake was
an organized and incorporated village from July 26, 1910, but that it
was never created, designated, or established as an election precinct by
the board of county commissioners of either Ward or Burke counties.
As to each of the other townships, the finding was substantially that they
were duly established election precincts at and prior to the general
election held November 8, 1910. It was then found where the duly
established voting place of each precinct was, and where the election
was held November 8, 1910, and that all the votes cast in each of such
precincts at such election were cast or polled at a place distant several
miles from the duly and legally designated voting place; and that in
each case such voting or polling place was still in existence and there
was no reason for holding the election or casting the votes at any other
place. And as conclusions of law, that the election held in the pre-
cincts of Powers Lake, Dale, Lucy, Fay, Portal, Vale Keller, Soo, and
Colville, November 8, 1910, was illegal, null and void, and of no effect,
and that the votes attempted to be cast thereat were illegal and null and
void; that the city of Bowbells received a majority of the legal votes
cast at such general election for county seat, and is the duly elected coun-
ty seat of Burke county; and that it would be an abuse of discretion of
the county by mandamus to compel the canvassing board to reconvene
and canvass the illegal votes attempted to be cast in the precincts set
forth. Judgment was directed, dismissing, the alternative writ, and
for costs. Such judgment was entered on the 5th day of October, 1911.
From it relators appeal.

*Noble, Blood, & Adamson,* of Minot, for relators and appellants.

*Fred B. Andrews, George R. Robbins,* and *George A. Bangs,* of Grand Forks, for defendants and respondents.

SPALDING, Ch. J. (after stating the facts). It is unnecessary to enter into details regarding the objection to evidence offered and the exceptions taken to rulings of the court thereon, as they all center around the general proposition which we shall discuss briefly.

1. The relators were seeking to have the votes of these townships canvassed and included in the result of the election. They applied to the court to compel such action on the part of the canvassing board, and the court held that the issuance of a writ of mandamus was an act of judicial discretion, and that he might take testimony for the purpose of securing information to enable him to intelligently exercise the discretion reposed in the court. It does not follow that the court was bound to decide in conformity with the testimony taken, particularly had it been conflicting. There was no conflict, and an adjournment for several weeks was taken, undoubtedly for the purpose of giving the relators an opportunity to meet the defense of the respondents, but it resulted in no attempt to do so, further than the filing of the demurrer referred to.

That the court may take evidence for the purpose of enlightening it in the exercise of its discretion cannot be doubted. Had he made private inquiry and sought private sources of information on which to rest the exercise of such discretion, it would have been to the appellants' disadvantage. No record would have been made, and in case of appeal this court would be compelled to rest upon the lack of showing of abuse of such discretion, but when evidence is taken the record can be present, and the appellate court is in position to review more intelligently the discretion exercised by the trial court, and determine whether it was a legal exercise of such discretion or an abuse thereof. It would be an improper use of the writ of mandamus to issue it when clearly apparent to the court to which application is made, or when it could be readily ascertained, that it could serve no purpose and would be useless when issued. Hence evidence regarding the location of the voting places and the unauthorized change was pertinent and material.

Mandamus is not a writ of right, and will not be granted to compel the performance of an act, even though required by law, when no bene-

ficial result would be attained, and it is issued only under extraordinary conditions, to compel the performance of a duty imposed by law, in favor of a party beneficially interested. therein. State ex rel. Davis v.. Willis, 19 N. D. 209, 124 N. W. 706; State ex rel. Hathorn v. United States Exp. Co. 95 Minn. 442, 104 N. W. 556; Baker v. State Canvassers, 111 Mich. 378, 69 N. W. 656; State ex rel. Vereen v. Marion County, 27 Fla. 438; People ex rel. Wood v. Assessors & Collector of Taxes, 137 N. Y. 201; Rice v. Coffey County, 50 Kan. 149, 32 Pac. 134; State ex rel. Mitchell v. Stevens, 23 Kan. 456, 33 Am. Rep. 175; State ex rel. Smith v. Drake, 83 Wis. 257, 53 N. W. 496. Many other authorities might be cited.

In State v. Drake, supra, mandamus was sought to compel the board to canvass votes. The regular time for opening the polls was 9 o'clock, and they were required to be kept open until sundown. They were open from 9 until 10, when they were closed, and the votes cast before that time destroyed. They were reopened and remained open until 4 o'clock. The Wisconsin court held that "it was no election within any law of the state," and said that "there must be shown a clear, legal right to the writ. . . . Neither the relator nor anyone else has any legal right to have the result of such a void election determined or carried into effect. It would be illegal to canvass and determine such a vote or return-it to the village clerk."

In State ex rel. Mitchell v. Stevens, 23 Kan. 456, 33 Am. Rep. 175, Judge Brewer, for the court, refused to issue its writ compelling the board of canvassers to convene and canvass the returns where such returns did not correctly reflect the actual vote returned. That court held that "the writ, to a great extent, was within the discretion of the court where application was made," and that "it would be a singular discretion for a court whose duty it was to uphold purity, justice, and honest dealing to give an apparent sanction to such an outrage, so gross and manifest." The facts were, in that case, that the returns showed a vote cast altogether out of proportion to the population.

We hold that the writ is not one of right, but one to be granted, as a general rule, in the discretion of the court, and that in determining how his discretion should be exercised, that court to which application is made may take testimony, and that it is not an abuse of discretion to

23 N. D.—40.

deny the writ when it is shown that its issuance would avail nothing to the relators. Belcher v. Treat, 61 Me. 577.

2. Was the alleged election in the precincts in question void? This court has already held in Elvick v. Groves, 17 N. D. 561, 118 N. W. 228, that where a voting place is duly established by the county commissioners, an election held at another place, over 3 miles distant, is unauthorized, and that the returns of such election should not be canvassed. The only question is whether that holding is applicable to the facts in the instant case. It is unquestioned that no precincts or voting places had been established by the commissioners of Burke county, and if there were legal voting places in these precincts they existed by reason of the action of the Ward county commissioners in March, 1908. The action of that board was subject to criticism. No resolution was passed by the board, as shown by their records, but their books show that they established the voting places at "the usual place." The records show that in 1908, that is, at the next election after such establishment, the votes were cast at places near the center of the townships. This evidence was offered for the purpose of showing that that was the usual voting place, but it is argued by the appellants that it has no tendency to prove that fact; that evidence should have been introduced showing where the election was held in 1906 and prior years. We, however, are of the opinion that the evidence offered was some evidence of the central localities being "the usual voting places" as designated by the commissioners.

The presumption of law is that the public officials did their duty, and that the 1908 election, held shortly after the designation, was held in accordance with the action of the commissioners. Bank of United States v. Dandridge, 12 Wheat. 64, 6 L. ed. 552; Nofire v. United States, 164 U. S. 657, 41 L. ed. 588, 17 Sup. Ct. Rep. 212; State ex rel. Anderton v. Kempf, 69 Wis. 470, 2 Am. St. Rep. 753, 34 N. W. 226; Powers v. Hitchcock, 129 Cal. 325, 61 Pac. 1076. We think that, in the absence of action by the Burke county commissioners, the places designated by the Ward county commissioners when they had jurisdiction continued to be the polling places until the matter might be acted upon by the Burke county commissioners. In any event, the evidence offered was sufficient, in the absence of any evidence to show the contrary; that is, of any evidence to show that the places where the voting was done in

November, 1908, were not the usual voting places. Relators were given ample time in which to submit proof of this fact. They had long been residents of the vicinity, and such proof must have been readily obtainable if it were a fact. The law regarding the place of holding elections is well settled. We need but make reference to Elvick v. Groves, supra, on this question. The reasons are patent to anyone who considers them. Take the instant case as an illustration: The 1908 election, held in the center of the township, the 1910 election on the border of the township, nearly 4 miles distant. It would be an easy matter for the people interested in one candidate as against another, or in one proposition as against another, to advise a portion of the voters of the change in the place of voting, and secure votes enough to carry any proposition, while those opposed remained entirely ignorant of the change or where to cast their ballots. We are not saying that any such practice prevailed in the instant case, but we must determine these matters upon what is possible, and the reason for the strict adherence to the law required as to conducting elections at the legal voting place. To sustain such unauthorized changes would be to open the door to fraud upon the electorate, and could only result in the frequent defeat of justice. The loss of a few votes on one election is of trifling importance as compared with what might happen if proceedings of this nature were sustained by the courts.

As to this question we may say further that we are not limited to the testimony taken, because the motion hereinbefore referred to and the demurrer filed by the relators both confessed, for the purpose of this case, the truth of the facts alleged in the answer or return. They were adequate to sustain the judgment of the court, and the court would have been justified in granting judgment on the demurrer.

3. The third and last point which we need consider relates to the action of the canvassing board in rejecting the returns of these precincts. It is said that they are wholly ministerial officers, and that they are disqualified to pass judgment upon the validity of an election. As a general proposition this is correct, but they were presumed to know the locality of the designated voting places and to take notice of the geography of their respective townships, and when the returns clearly indicated that the election had been held at a point distant from the designated place they were justified in declining to canvass such

returns. They are not returns. Of course facts might be made to appear which would not justify them in their action, as intimated in the Elvick Case, but no such facts are found in the case at bar; on the contrary it is expressly found that none existed. We do not, however, think that it is necessary for us to determine whether they had a right to reject such returns. In fact, they did reject them, and the relators called upon the court to consider that fact and direct the officers to include them in their totals on which to base the certificate of election, when it invoked the extraordinary powers of the court to execute its mandate for that purpose. The court, properly, as we have seen, inquired into the facts, and, finding that on a contest of the election there would be no justification for changing the certificate, declined to issue the writ. This is the sum and substance of the proceeding.

We do not discover any abuse of discretion on the part of the learned trial court warranting a reversal. Relators assert that the defense sustained by the trial court was purely technical. We do not so regard it. We are aware of the motion prevalent in the minds of many people, to the effect that citizenship gives the right to vote, regardless of the regulations wisely provided by the legislature for preserving the purity of elections and the sacredness of the ballot. The Constitution expressly authorized the regulation of elections by the legislative assembly. That body has acted and prescribed the manner and method of holding elections, and by law has provided general rules for fixing the places where voting shall be done.

It is not a technicality to require the law to be obeyed, in spirit at least. If a part of a community may, in direct conflict with express provisions of law, change the voting place at will or to suit the convenience of a portion of the voters, other portions of the same community may do likewise, and there may be as many elections held in a precinct as there are persons to be accommodated or ends to be served. Officers and courts alike are bound by the law.

Those whose desires are defeated are wont to term the cause of their defeat a technicality, and inveigh at officers and courts who read and obey. Yet this cry furnishes no excuse for those whose sworn duty is to obey and construe to disregard the wise regulations made by the legislative department.

Litigants are fortunate if not required to obey unwise legislation,

and courts cannot relax the rule simply because they see, as they often do see, that a provision might be improved or might have been made more reasonable. We have, in this case, disregarded everything but the merits, when we might in fact, with less trouble, have rendered a decision on questions of practice, with the same result.

The holding in Elvick v. Grove, supra, is supported by the great weight of authority, but even if we were inclined to depart from the rule therein announced, and follow the minority rule, it would avail relators nothing, as they have not brought themselves within its terms. Under it the burden was on them to show that the change was made in good faith, without fraud, and without no intent to injure the cause of respondents, and that in fact no one was thereby deprived of his vote.

Relators showed none of these things. See Whitcomb v. Chase, 83 Neb. 360, 119 N. W. 673, 17 Ann. Cas. 1088, and note p. 1090.

The judgment is affirmed.

Mr. Justice Goss, being disqualified, did not participate.