[File No. 5974.]

HARVEY C. DAWES, Appellant, v. CITY OF GRAND FORKS, a Municipal Corporation, et al., Respondents.

(243 N. W. 802.)

Opinion filed November 20, 1931. Rehearing denied March 16, 1932.

*Lemke & Weaver,* for appellant.

*O. T. Owen,* for respondents.

CHRISTIANSON, Ch. J.   The plaintiff applied to the district court of Grand Forks county for a peremptory writ of mandamus to compel the commissioners of the city of Grand Forks to re-instate him as a member of the police force of that city and to pay his salary at the rate of $130.00 per month since July 1, 1930.

In their answer the respondents averred that the president of the board of city commissioners of Grand Forks, on or about June 30, 1930, notified the petitioner Dawes that he (said president) had suspended said Dawes from his position as a policeman in that city, to become effective July 15, 1930, and that such suspension would be in full force and effect pending the hearing of charges against said Dawes; that subsequently the said petitioner was notified by the various officers of the city of Grand Forks that he was entitled to a hearing, and that the

city attorney, on July 23, 1930, notified the petitioner that he could have a hearing on that day before the city commissioner but the said petitioner then stated that he had decided "to quit his position;" that he had already done so and that he did not want a hearing before the board of city commissioners. It is further averred in said answer that the petitioner thereafter gave no intimation that he desired a hearing and that approximately three months had elapsed from the date of the suspension before the petitioner gave any notice of a desire to change his mind or that he desired to seek reinstatement, "after having voluntarily resigned and abandoned his position without having a hearing."

At the conclusion of the hearing the trial court made an order to the effect "that this Court cannot at this time, and under the present conditions determine the rights of the plaintiff; therefore, the cause is remitted to the City Commission of the City of Grand Forks, directing said City Commission, under the statute of this State, to make and file and serve upon the said complainant Dawes, its charges against said Dawes and set a time for hearing of the same; to give said Dawes due and timely notice thereof, when said matter, if said Dawes elects to have a hearing, may be fully heard and determined by said City Commission." The plaintiff has appealed from the decision of the trial court and contends that the writ of mandamus should have been issued as prayed for.

The petitioner Dawes was appointed a member of the police force of the city of Grand Forks in June, 1927. He was re-appointed on or about April 30, 1930, and continued to serve until July 15, 1930. On June 29, 1930, the chief of police gave him written notice that his services were no longer required; and on July 16, 1930, the chief of police asked him to surrender his star and "outfit" which he did, and since that time he has not performed any of the duties of a policeman.

It appears that after the chief of police notified the petitioner on June 29, 1930, that his services would be required no longer, the petitioner went to see the president of the city commission, and also the police commissioner. It is admitted that certain conversations were had between the petitioner and the president of the city commission and the petitioner and the police commissioner relating to petitioner's

removal but there is a dispute as to what was said. The petitioner testified that after the chief of police (on June 29, 1930) told him that his services would not be required after June 30, 1930, he (petitioner) went to see the president of the city commission. The president of the city commission testified as follows regarding the conversation then had:

"Mr. Dawes came into my office and informed me that he had been let go that morning by the Chief of Police. It was in the morning, and he was to be let out the day after, effective June 30th. . . . I says, 'Harvey, that is rather short notice. I will take the matter up with the Chief, or either give you two weeks notice, or two weeks work, or two weeks pay, and then you will have to remain suspended until the hearing is held before the city Commission.' "

The petitioner denied that the president of the commission said anything whatever about suspending the petitioner. He testified that the president of the commission said that he knew nothing about the matter; that the chief of police hadn't mentioned petitioner's name for three or four months; but that he (the president) would see what he could do and directed the petitioner to see the police commissioner, one Holt; that the petitioner thereupon did go and have a talk with the police commissioner and was informed by him that the position on the police force held by the petitioner had been promised to one Bliven and that he (the police commissioner) did not want to interfere with the chief of police. The police commissioner testified that he had several conversations with the petitioner; that after being informed by the petitioner as to the proposed action of the chief of police he (the police commissioner) stated that he would take the matter up with the president of the commission and with the chief of police. That in one of such conversations the petitioner asked what he could do about being re-instated and that thereupon the police commissioner replied: "Of course, you have recourse, you may appear before the commission at any time, but in my view it would place you in an embarrassing position and if I was you I would lay down." That the petitioner then asked that he be retained on the police force at least two weeks more; that thereupon the police commissioner took the matter up with the president of the commission and was informed by him that that matter.

had already been taken care of because he had suspended the petitioner had become effective July 15th which would retain him on the police force for two weeks. The police commissioner further testified:

"I distinctly offered Mr. Dawes this kind of a hearing: I explained that I was a new man on the commission, and wasn't familiar with the workings of the law, but I did say to him that he could appear before the Commission at any time, and. I also told him that the Chief had sufficient charges to place against him, and in my opinion, it would place him in an embarrassing position."

Evidence was also adduced concerning a conversation had between the petitioner, Dawes, and O. T. Owen, city attorney of the city of Grand Forks, on or about July 23, 1930. One Henry G. Owen (a brother of the city attorney), who was present at the time of the conversation testified as follows:

"O. T. Owen the City Attorney informed Mr. Dawes that under the law he was entitled to a hearing, and that he could have that hearing at any time it would be convenient to himself and to the Members of the City Commission. The day he was in the office was the regular meeting day of the City Commission, on a Wednesday, and O. T. Owen requested Mr. Dawes to come to that meeting and that arrangements would be made then and there for a fair, full and complete and impartial hearing and investigation, and he guaranteed Mr. Dawes that he would have a full, fair and impartial hearing. Mr. Dawes said that he didn't want a hearing; he knew that they were prejudiced against him, and felt he wouldn't have a fair hearing before the Commission; that it wouldn't do him any good, and that he was through, and didn't want a hearing or anything more to do with it."

Said Henry G. Owen further testified that about a week later, in a conversation between the said Dawes and the city attorney, said Dawes stated "that he was through, 'I don't want these matters made a public record.'"

The petitioner Dawes admitted that a conversation occurred between him and the city attorney but he denies that the conversation was such as testified to by said Henry G. Owen.

Under the laws of this state a policeman appointed by the Board of City Commissioners is an officer of the city. Comp. Laws 1913, §

3801. Our laws provide: "Every person appointed to any office may be removed therefrom by a majority of votes of all the members of the board of city commissioners, but no such officer shall be removed except for cause nor unless charges are preferred against him and an opportunity given him to be heard in his defense. The board of city commissioners may compel the attendance of witnesses and the production of papers when necessary for the purpose of such hearing, and shall proceed within ten days after the charges are filed with the city auditor to hear and determine the case upon its merits. The president of the board of city commissioners may suspend any officer against whom charges have been preferred until the disposition of the same, and appoint any officer to fill the vacancy temporarily until the charges have been disposed of. Any officer appointed by the president of the board of city commissioners without confirmation under the provisions of this chapter may be removed by him when he deems it for the best interests of the city." Comp. Laws. 1913, § 3808.

"The writ of mandamus is not a writ of right. Its allowance rests in the discretion of the court." That discretion, however, is a sound judicial one and is not to be exercised capriciously. Territory ex rel. Wallace v. Woodbury, 1 N. D. 85, 44 N. W. 1077. See also 38 C. J. p. 549; Meechem, Pub. Off. § 943. In the exercise of its discretion "the court may and should take into consideration a wide variety of circumstances in determining whether the writ should issue. It is elementary that the court is not bound to allow the writ merely because the applicant shows a clear legal right for which mandamus would be an appropriate remedy, even though without mandamus the applicant for the writ would be without remedy. Even under these circumstances the court may deny the writ where by its issuance the public would be injuriously affected, . . . or where there has been laches in seeking the remedy." 38 C. J. pp. 549, 550.

While mandamus lies to compel reinstatement of an officer who has been wrongfully removed, the applicant for the writ must show that he is clearly entitled to it. He must show that he has acted with reasonably due diligence and with due regard, not only for his own rights but for the rights of others including the general public; and where it appears that the interests of the general public are likely to be inju-

74

riously affected or that disorder or confusion are likely to result if the writ be issued, it may be denied (38 C. J. p. 550), and if the applicant, by his own conduct, has created a situation, or permitted a situation to arise, which will likely result in injury to others if the writ is granted, then the writ will be denied.

In this case it is apparent that complications will arise if the writ were issued now, which would not have arisen if the petitioner had made prompt application therefor. If he had made such application then doubtless formal written charges would have been filed and the city commissioners could, and doubtless would, have proceeded with a hearing. It is the policy of this state that controversies involving the title to a public office should be instituted promptly. A candidate at a primary election, who desires to contest the nomination of another candidate or candidates, must initiate his contest within ten days after the canvass. Comp. Laws 1913, § 881. And any action to contest the right of a person declared to have been elected to an office or to annul or set aside such election or to remove a person from office on any ground, other than the illegal expenditure of money, must be instituted within forty days after the returns of the election; and if such contest is based upon illegal expenditure of money in violation of the corrupt practice act, then it must be instituted within forty days after the discovery by the complainant of the illegal expenditure of money. Comp. Laws, 1913, § 943. In our opinion a person holding an appointive office who is dismissed as was the petitioner here and who stands by and permits another person to discharge the duties of the office and receive the compensation for some twelve weeks, cannot then be heard to say that the writ of mandamus should issue to compel his reinstatement into the office, and the payment to him of compensation for services which he did not perform.

There is another reason why the petitioner is not entitled to a writ of mandamus. It is well settled that a public officer may abandon his office. This principle is recognized by our statute which makes the failure of an officer to discharge the duties of office for sixty consecutive days tantamount to a resignation, in that it creates a vacancy in the office. Comp. Laws 1913, § 683. According to the testimony of Henry G. Owen the petitioner had abandoned his office and admitted that fact

to the city attorney. According to this testimony the failure of the petitioner to discharge the duties of the office or claim the right to do so was due to his deliberate intention of abandoning the office and he acquiesced in the order of removal. It is axiomatic that acquiescence in error takes away the right of objecting to it. Comp. Laws 1913, § 7250. While the trial court, in the order appealed from, did not determine the disputed question of fact as regards abandonment, in the written opinion filed with the order the trial court said: "If the court was to determine this matter (whether the petitioner had been offered a hearing) and had the power to determine it, it would have to say that the greater weight of the testimony establishes that Mr. Dawes was offered a hearing and requested to have a hearing, but declined and said that he did not want a hearing; and the court would also have to further hold that he had never demanded one."

We are agreed that upon the record presented on this appeal, the petitioner has not shown himself entitled to a writ of mandamus.

The cause is remanded with direction to dismiss the proceeding.

BURKE, BIRDZELL, NUESSLE and BURR, JJ., concur.