239 N.W.2d 842 (1976)
FARGO EDUCATION ASSOCIATION, Plaintiff-Appellant,
v.
John Q. PAULSEN et al., Defendants-Appellees.
No. 9168.
Supreme Court of North Dakota.
March 12, 1976.
*843 Daniel J. Chapman, Bismarck, for plaintiff and appellant.
Tenneson, Serkland, Lundberg & Erickson, Fargo, for defendants and appellees; argued by Norman G. Tenneson, Fargo.
SAND, Judge.
The appellant, Fargo Education Association (hereinafter the Association), the designated representative organization for all classroom teachers employed in the Fargo Public School District # 1, appealed from the order of the Cass County District Court denying its petition for writ of mandamus.
The Association, as the representative of the classroom teachers, was engaged in negotiations with the school board of Fargo Public School District # 1 (hereinafter the Board) on employer-employee matters.
The Association alleged in its pleadings that the Board refused to negotiate on nine stated issues, other than salaries for teachers, on the grounds of management prerogative, and petitioned the district court for a writ of mandamus to compel the named members of the Board to negotiate in good faith on the nine stated issues in controversy between the parties.
*844 The district court found that a legal question of substance existed as to whether or not the Board was under any legal duty to act under the applicable statute (Chapter 15-38.1, NDCC) and therefore this was not a proper case for employing the remedy of mandamus. The Association appealed from this denial.
In denying the petition for the writ of mandamus, the district court stated that, upon application, leave to amend the petition so that the proper remedy may be invoked will be liberally extended. However, the Association elected to appeal rather than to amend.
The Association on appeal now asks that this court return the matter to the trial court with a mandate to rule upon the issues presented to it on petition for the writ of mandamus or in the alternative rule as a matter of law that the writ of mandamus should issue.
The writ of mandamus is provided for in § 32-34-01, NDCC, which states:
"The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is precluded unlawfully by such inferior tribunal, corporation, board, or person." [Underscoring ours.]
Section 32-34-02, NDCC, reads as follows:
"The writ must be issued in all cases when there is not a plain, speedy, and adequate remedy in the ordinary course of law. It must be issued upon affidavit upon the application of the party beneficially interested except those writs issued sua sponte by the supreme court." [Underscoring ours.]
This court has held that the prerequisites to the issuance of a writ of mandamus are that the petitioner must show that he has no plain, speedy, and adequate remedy in the ordinary course of the law and that he has a clear legal right to the performance of the particular act sought to be compelled by the writ. This implies more than a bare allegation. Great Lakes Pipe Line Co. v. City of Grand Forks, 142 N.W.2d 126 (N.D.1966); Dakota National Ins. Co. v. Commissioner of Insurance, 79 N.D. 97, 54 N.W.2d 745 (1952); Midland Produce Co. v. City of Minot, 70 N.D. 256, 294 N.W. 192 (1940); Cary v. Morton County, 57 N.D. 700, 223 N.W. 928 (1929).
The Board claims that the Association did not meet or satisfy the basic requirements for a writ of mandamus as indicated by § 32-34-01 and § 32-34-02, NDCC. The Board contended that the Association had an adequate remedy at law, such as declaratory judgment, and also argued that the Association not only failed to show, but actually could not show, that it did not have a plain, speedy, and adequate remedy in the ordinary course of law. The Board also argued that the required "right to compel performance" had not been established. The Board contended specifically that the items[1] listed in paragraph V of the petition for writ of mandamus are not negotiable. The Board further contended that pursuant to § 15-38.1-14(2),[2] NDCC, it was not compelled to negotiate on any duties, responsibilities *845 or powers imposed upon it by statute.
The Association, however, contends that § 15-38.1-12(1), NDCC, requires the Board to negotiate on all matters that affect "terms and conditions of employment and employer-employee relations."
We recognize that as between § 15-38.1-12 and § 15-38.1-14 there appears to be some need for construction or interpretation, and that a need for reconciliation may exist. This issue, however, has not been sufficiently refined in this instance so as to require or permit resort to § 1-02-08, NDCC, to reconcile any differences that may exist.
The trial court found that "a bona fide dispute on a material legal issue" existed which would require the court to first determine whether or not there was any duty to act before it could determine that a duty existed which was not being performed. The trial court stated that, "where there is a legal question of substance . . . which clouds the question whether a board has a duty to act, I don't believe that this court should use its extraordinary powers given it by statute in the mandamus chapter."
The trial court in announcing its decision made a general reference to American Jurisprudence 2d, without stating the volume or page. In 52 Am.Jur.2d Mandamus, § 35, page 360, the following is stated:
"The function of mandamus is to compel action by the respondent, and it cannot be employed to adjudicate and establish rights or define duties. The courts act with caution with respect to the writ and award it only in cases where it clearly appears that under the law it ought to issue, upon a clear showing as to the applicant's right, and the respondent's duty. The writ will not be granted in a doubtful case, or if the injuries complained of are too speculative to warrant resort to an extraordinary remedy, and this is especially true where, if granted, the writ will not be effectual."
And, at 55 C.J.S. Mandamus § 63, page 100, we find the following:
"Mandamus will lie to compel performance of a specific ministerial or administrative act or duty, and, as a general rule, mandamus is the proper remedy only where the act or duty is purely ministerial, and is clearly and plainly established or imposed by law."
The petitioner for a writ of mandamus must also have a clear legal right to the relief sought.
The fact that the court will be forced to construe or interpret a statute or examine the facts to which a statute applies does not necessarily preclude the remedy of mandamus. More frequently than not, statutes defining the duties of a public officer will lend themselves to different constructions or interpretations by the parties involved and will require a judicial construction. Because some judicial interpretation may be required to enunciate specifically the duties of the officer does not necessarily preclude a court from employing the mandamus procedure. Case law in North Dakota supports this concept.
In Henley v. Fingal Public School District # 54, 219 N.W.2d 106 (N.D.1974), a teacher, by summons and complaint, sought to enjoin the school board from hiring a person to replace him and to require the school board to issue a teaching contract to him. The Supreme Court construed and interpreted the statutes in dispute after examining the language in some detail, and held that under its interpretation mandamus should have been granted the teacher, but because it was too late to grant it then, as the school year had already been completed, the case was remanded to the district court to determine the compensatory damages to which the teacher was entitled.
Great Lakes Pipe Line Co., supra, involved another dispute over whether the statute in question imposed a duty upon a public body. The Supreme Court, after *846 construing the statutes involved, examined the facts in the case. The Supreme Court stated that the petitioner had alleged all the facts, which, if established, would demonstrate a clear legal right to relief. The Court then concluded that in order to determine whether or not the facts were established it must look at the findings of fact and conclusions of the city council which were by law conclusive on the courts if the city had a population of over three thousand. The Supreme Court found that the facts established brought the matter within the statute and that the conditions were met for the writ of mandamus. The order of the district court denying the writ was reversed. See also, Dakota National Ins. Co. v. Commissioner of Insurance, supra, and Kessler v. Board of Education of City of Fessenden, 87 N.W.2d 743 (N.D.1958), where the Court was required to interpret the statutes in question but nevertheless proceeded with a writ of mandamus.
Thus, North Dakota case history shows that the court has not always hesitated to interpret statutes, the construction of which were in dispute, in mandamus cases.
There are several statutes in this case which are subject to interpretation and construction when considered with other statutes.
One of the most pertinent is § 15-38.1-12, NDCC, which states, in part:
"1. The school board, or its representatives, and the representative organization, selected by the appropriate negotiating unit, or its representatives, shall have the duty to meet at reasonable times at the request of either party and to negotiate in good faith with respect to:
"a. Terms and conditions of employment and employer-employee relations."
The Board contends that these negotiations are meant to be limited by other statutes. Under subsections 6 and 9 of § 15-51-17, NDCC, the Board of Education has the power to contract with, employ all teachers, manage the schools, and formulate rules and regulations for their government.
Section 15-38-01, NDCC, confers certain powers upon the superintendent of schools, subject to the authority of the school board.
Section 15-38.1-14, NDCC, provides that the negotiation procedures provided for in that chapter are not intended to "conflict with, contravene, abrogate, or diminish the powers, authority, duties, and responsibilities vested in boards of education."
The Board contends that these statutes, properly construed, establish rights in certain areas of school management which are not subject to negotiation. This is seriously disputed by the Association.
We agree that there is room for interpretation and construction of § 15-38.1-12 and § 15-38.1-14, but do not necessarily conclude that this constitutes a bar to the use of a writ of mandamus.
In construing and interpreting these statutes we should also take into consideration other pertinent provisions of the Code.
The North Dakota Legislature provided in § 1-02-02 and § 1-02-03, NDCC, that words used in any statute are to be understood in their ordinary sense and are to be construed according to the context and the rules of grammar and the approved usage of the language.
The term "negotiate" is defined in Webster's Third New International Dictionary as:
"to communicate or confer with another so as to arrive at the settlement of some matter: meet with another so as to arrive through discussion at some kind of agreement of compromise about something: come to terms esp. in state matters by meetings and discussions . . to arrange for or bring about through conference and discussion: work out or arrive at or settle upon by meetings and agreements or compromises."
It is also defined in Black's Law Dictionary (4th ed.) as follows:

*847 "To transact business, to treat with another respecting a purchase and sale, to hold intercourse, to bargain or trade, to conduct communications or conferences. It is that which passes between parties or their agents in the course of or incident to the making of a contract and is also conversation in arranging terms of contract."
The North Dakota Legislature also defined "good faith" in § 1-01-21, NDCC, as follows:
"Good faith shall consist in an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious."
With reference to "good faith," the Supreme Court of Michigan, in Detroit Police Officers Ass'n v. City of Detroit, 391 Mich. 44, 214 N.W.2d 803, 808 (1974), stated:
"The primary obligation placed upon the parties in a collective bargaining setting is to meet and confer in good faith. The exact meaning of the duty to bargain in good faith has not been rigidly defined in the case law. Rather, the courts look to the overall conduct of a party to determine if it has actively engaged in the bargaining process with an open mind and a sincere desire to reach an agreement. [Citations omitted.] The law does not mandate that the parties ultimately reach agreement, nor does it dictate the substance of the terms on which the parties must bargain. In essence the requirements of good faith bargaining is simply that the parties manifest such an attitude and conduct that will be conducive to reaching an agreement."
As used in the statute, we believe to "negotiate" simply means to present proposals and offer counterproposals, to discuss proposals, to carry on a dialogue, to exchange ideas, all for the purpose of persuading or being persuaded by logic and reasoning. This means that the parties must also be willing to listen and not only talk. It is the art of friendly persuasion. The persuasion can result in an agreement and understanding or a settlement of issues. It does not mean that an agreement must be reached. Neither side is required by law to surrender or abrogate any of its duties and responsibilities. Neither does it mean formal or binding arbitration.
From the foregoing definition and authorities, it becomes apparent that the term "negotiate in good faith" does not have any mysterious connotations or hidden meanings and as such it should not be too difficult to understand or to work within its framework.
The Board, however, would not be required to surrender or abrogate any of its duties or responsibilities by negotiating with the Association on matters relating to employer and employee relations if the negotiations are carried on within the definitions set forth above.
We now need to examine the nine issues upon which the Board refused to negotiate to determine whether or not they come within the provisions of § 15-38.1-12, NDCC, relating to terms and conditions of employment or employer-employee relations.
Unfortunately, the Association merely listed the nine issues but did not elaborate upon or describe them. They are:
(1) Class size.
(2) Procedures for reduction in force.
(3) Policies for individual and professional leave.
(4) Procedure for establishment of curriculum to permit teacher input.
(5) Teacher evaluation policies.
(6) Teacher transfer procedures.
(7) Grievance procedure, including binding arbitration.
(8) Binding arbitration in negotiations.
(9) Schedule for work year.
*848 The Supreme Court of Nevada was faced with a situation similar to the one at hand in two cases which were decided together: Clark County School District v. Local Government Employee Management Relations Board, and Wasboe County Teachers Association v. Washoe County School District, 530 P.2d 114 (Nev.1974). The statute in question there provided for negotiations over wages, hours, and conditions of employment somewhat narrower than the North Dakota statute, § 15-38.1-12, NDCC.
In the Clark County case the question at issue involved classroom preparation time. The school board argued that this was a policy matter and not subject to negotiation. The court held that this was not a sufficient defense as many matters which bear on management policy are still linked to wages, hours, and working conditions. The court went on to hold that anything which significantly related to wages, hours, and working conditions were negotiable even though also related to management prerogative. In the Washoe County case the court held that this included (1) class size, (2) professional improvement, (3) student discipline, (4) school calendar, (5) teacher performance, (6) differentiated staffing, (7) teacher load, and (8) instructional supplies. The court held that negotiations over these issues would not dilute the stature of the school board.
In Pennsylvania Labor Relations Board v. State College Area School District, 337 A.2d 262 (Pa.1975), the teachers' association filed an unfair labor charge against the school board for failing to negotiate. The Pennsylvania statute required negotiation on issues concerning "wages, hours and other terms and conditions of employment." The Pennsylvania court held that it was called upon to "strike a balance wherein those matters relating directly to `wages, hours, and other terms and conditions of employment' are made mandatory subjects of bargaining and reserving to management those areas that the public sector necessarily requires to be managerial functions." The court went on to say that where an item of dispute is a matter of fundamental concern to the employees' interest in wages, hours, and other terms and conditions of employment it is not removed as a matter subject to good faith bargaining simply because it may touch upon basic policy. It, however, held that the wording of the items in issue was too ambiguous and difficult to categorize and remanded the case to the Pennsylvania Labor Relations Board.
The Association claims that under the tests laid down in the Clark County and Washoe County cases its nine items are subject to negotiation under § 15-38.1-12, NDCC.
The terms "employer-employee relationship" and "conditions of employment" have a rather broad meaning. They appear to be more encompassing than the statutory terms discussed in the Clark County and Washoe County cases, supra. From the titles given to the items sought to be negotiated, a strong suggestion or implication arises that they are items which come within the statutory terms, but it would be beneficial to have a further description for each item before a definitive ruling is made on each item. As the old saying goes, "One cannot judge a book by its cover." A further explanation would bring about greater communication and would develop a better common understanding.
The trial court, in its discretion, could have asked for a clarification.
While we could conclude that the titles are sufficiently suggestive to imply that the items come within the negotiation provisions, we hesitate to conclude as a matter of law without any further clarification or description that the trial court should have so concluded.
As has been stated earlier herein, case law in North Dakota shows that the court in a mandamus action may interpret statutes to determine what duty is owed by a party under the statute. But the granting of a writ of mandamus even after the determination that a duty is owed need not *849 necessarily follow because the court may exercise discretion in granting or denying the extraordinary writ.
". . . it is the prevailing view in this country, although there is authority to the contrary, that mandamus is not a writ of right, even though there is a clear legal right in the petitioner, a corresponding duty in the defendant, and want of other appropriate and adequate remedy, but issuance or denial of the writ is a matter resting within the sound discretion of the trial court." 52 Am.Jur.2d Mandamus § 39, page 364.
North Dakota has followed the view that the writ of mandamus is not available as a matter of right but also involves the sound discretion of the court.
This court will not overturn the trial court's denial of a writ of mandamus unless there is a finding that the court has abused its discretion. Dawes v. City of Grand Forks, 62 N.D. 67, 243 N.W. 802 (1931); State ex rel. Johnson v. Ely, 23 N.D. 619, 137 N.W. 834 (1912); Territory ex rel. Wallace v. Woodbury, 1 N.D. 85, 44 N.W. 1077 (1890). In Dawes, the court said that even where the applicant shows a clear legal right for which mandamus would be an appropriate remedy and where without the writ the applicant would be without remedy, the court may deny the writ where by its issuance the public would be injuriously affected or where there has been lathes in seeking the remedy. In Ely the court said that mandamus will not be granted to compel the performance of an act, even though required by law, when no beneficial result will be attained. See also, 55 C.J.S. Mandamus § 9, page 29.
Under these principles of law and under the conditions existing in this case, and being particularly mindful that the trial court stated to the petitioners in open court that upon application leave to amend the petition so that the proper remedy may be invoked will be liberally extended, we cannot conclude as a matter of law that the trial court abused its discretion in denying the application for writ of mandamus even though another court may have reached a different conclusion.
We therefore conclude that the trial court did not abuse its discretion in denying the Association's application for a writ of mandamus.
ERICKSTAD, C. J., and VOGEL, PEDERSON and PAULSON, JJ., concur.
NOTES
[1] (1) Class size; (2) procedures for reduction in force; (3) policies for individual and professional leave; (4) procedure for establishment of curriculum to permit teacher input; (5) teacher evaluation policies; (6) teacher transfer procedures; (7) grievance procedure, including binding arbitration; (8) binding arbitration in negotiations; (9) schedule for work year.
[2] "Nothing contained herein is intended to or shall conflict with, contravene, abrogate, or diminish the powers, authority, duties, and responsibilities vested in boards of education by the statutes and laws of the state of North Dakota."