Charles P. GUARIGLIA, Applicant [Petitioner for Writ Below], and Appellee,

v.

NORTH DAKOTA STATE BOARD OF ARCHITECTURE and William E. Harrie, Bernard H. Hillyer, and Robert W. Anderson, its Members, Respondents [Defendants Below], and Appellants.

Civ. No. 9447.

Supreme Court of North Dakota.

July 13, 1978.

John D. Kelly, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for applicant [petitioner for writ below], and appellee.

Garry A. Pearson, of Pearson & Christensen, Grand Forks, for respondents [defendants below], and appellants.

VOGEL, Justice.

This is an appeal by the North Dakota State Board of Architecture (hereinafter Board) from an order of the district court of Burleigh County, granting a writ of mandamus which commanded the Board to issue a certificate of architectural registration to Guariglia.

In June of 1976, Guariglia made application to the Board for certification and registration to practice architecture in this State on a reciprocal basis.[1] At the time he made application, Guariglia was registered as an architect in 40 States as well as the District of Columbia and held a certificate issued by the National Council of Architectural Registration Boards.

It was stipulated by the parties that "Guariglia was in fact denied a license to practice architecture by the North Dakota State Board of Architecture solely because he was, at the time of his application, employed by Bank Building and Equipment

---

1. "43–03–15. When examination not necessary.—A nonresident applicant seeking to practice architecture in North Dakota may be admitted to practice, if:

"1. The applicant holds a license in the state where his office is located; and

"2. The applicant holds a National Council of Architectural Registration Boards certificate, when:

"a. The applicant files his application with the board, containing such information concerning the applicant as the board considers pertinent; and

"b. The board receives from the National Council of Architectural Registration Boards a certified copy of the applicant's council record."

Corporation" and "that it was a reasonable inference on the part of the [Board] that if . . . Guariglia were granted [a license] to practice architecture in North Dakota, [he] would have thereafter practiced architecture in that state as [an employee] of Bank Building and Equipment Corporation."

After being denied an architectural license, Guariglia, on August 13, 1976, filed an application for a writ of mandamus pursuant to Chapters 32–32 and 32–34 of the North Dakota Century Code. On September 7, 1976, the district court of Burleigh County issued an alternative writ of mandamus directing the Board to issue to Guariglia a certificate of architectural registration in North Dakota or show cause why it had not done so on September 20, 1976. The show-cause hearing was postponed, and on September 21, 1976, counsel for the Board informed counsel for Guariglia that a license would be granted if Guariglia gave the Board assurance that his practice would be "wholly noncorporate." A hearing was held on October 20, 1976, after which the district court issued a memorandum opinion and a peremptory writ of mandamus commanding the Board to grant a certificate of registration to Guariglia.

Section 32–34–01, N.D.C.C., provides statutory authority for the issuance of a writ of mandamus, as follows:

> "The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is precluded unlawfully by such inferior tribunal, corporation, board, or person."

Section 32–34–02, N.D.C.C., directs that the writ

> ". . . must be issued in all cases when there is not a plain, speedy, and adequate remedy in the ordinary course

of law. It must be issued upon affidavit upon the application of the party beneficially interested except those writs issued sua sponte by the supreme court."

We have held that "the prerequisites to the issuance of a writ of mandamus are that the petitioner must show that he has no plain, speedy, and adequate remedy in the ordinary course of the law and that he has a clear legal right to the performance of the particular act sought to be compelled by the writ." *Fargo Ed. Assn. v. Paulsen,* 239 N.W.2d 842, 844 (N.D.1976).

The Board argues that it has discretion in granting architectural licenses on a reciprocal basis in this State pursuant to Section 43–03–15, and that Guariglia therefore has no clear legal right to such a license. Section 43–03–15, quoted in footnote 1, is entitled "When examination not necessary" and begins with these words:

> "A nonresident application seeking to practice architecture in North Dakota *may* be admitted to practice, . . ."[2] [Emphasis added.]

The word "may" used in a statute often is interpreted in different ways depending upon its context. As we stated in *Chester v. Einarson,* 76 N.D. 205, 34 N.W.2d 418, 428 (1948),

> "The verb 'may' has a wide scope of meaning. It has various meanings often depending on the context. [Citation.] The word 'may' in a statute may mean 'shall' or 'must', it may import permission or liberty to act, or it may mean 'to have power' to act."

In order to determine whether the Board has discretion in granting reciprocal architectural licenses and the extent of such discretion if it exists, it is necessary to examine Section 43–03–15 within the context of the chapter governing the regulation of the practice of architecture.

Section 43–03–13 sets forth the qualifications required of an applicant seeking an architectural license in this State:

---

**2.** See footnote 1 for full text of section.

"An applicant for registration as an architect shall have the following qualifications:

"1. Be of legal age;

"2. Be of good moral character, with rejection possible on the basis of the following:

"a. Conviction of an offense determined by the board to have a direct bearing upon an applicant's ability to serve the public as an architect, or the board determines, following conviction of an offense, that the applicant is not sufficiently rehabilitated under section 12.1–33–02.1;

"b. Misstatement or misrepresentation of fact by the applicant in connection with his application;

"c. Violation of any of the standards of conduct required of license holders and set forth in the statutes;

"3. Have successfully completed an examination for registration; and

"4. Have had what practical experience and academic training as is specified in the current guidelines published by the National Council of Architectural Registration Boards."

Section 43–03–14 provides that "Before an applicant may be registered as an architect, he shall pass satisfactorily an examination . . ."

Section 43–03–16 states that "The result of every examination for registration as an architect, or the evidence of qualifications, shall be recorded by the secretary of the board, *and the board shall issue a certificate of registration to every person who has passed the examination or otherwise is entitled to receive the certificate. . . .*" [Emphasis added.]

 We interpret Section 43–03–15 to mean that the Board has the power to waive the requirement contained in Section 43–03–13, subsection 3, under certain specified conditions. The discretion which the Board is given under this section [43–03–15] is limited to determining whether the applicant's qualifications meet the statutory standards so as not to require an examina-

tion. We agree with the district court's statement in its memorandum opinion that

" 'May' is permissive only to the extent the Board has absolute discretion to determine whether to issue a license, pursuant to Sec. 43–03–15, or require an examination, pursuant to Sec. 43–03–14. But it must do one or the other with respect to qualified applicants. Furthermore, no discretion is absolute. It cannot be arbitrarily exercised."

In this case the Board admitted that Guariglia satisfied the statutory requirements qualifying him for an architectural license, but refused to grant him a license because of his employment with a corporation. The Board relied on our previous holding in *State Bd. of Archit. v. Kirkham, Michael & Assoc., Inc.,* 179 N.W.2d 409 (N.D.1970), that a corporation is not qualified to hold an architectural license in this State. However, the corporation is not applying for a license to practice architecture in the State; rather, an individual employed by a corporation is seeking licensure. While it was stipulated that it was a reasonable inference that Guariglia would practice architecture in the State as an employee of a corporation if granted a license, we hold that the Board's refusal to grant the license on that basis was improper. We decline to hold that a presumption of the Board is equivalent to a lack of statutory qualification.

The Board attempted to exercise its discretion beyond the authority given to it by the Legislature. The Legislature specified the qualifications required of an applicant for registration as an architect in Section 43–03–13, and the Board does not have the power to impose additional or different requirements for qualification. It was improper for the Board to deny Guariglia an architectural license because of what it anticipated that Guariglia would do after being granted the license. The Board's belief that Guariglia would practice illegally if granted a license was not based upon any past conduct of Guariglia.

The Board attempts to sustain its refusal of a license by asserting that the "reasona-

ble inference" that Guariglia would in the future violate the law indicates that he lacks the "good moral character" which is one of the requirements for a license. Sec. 43–03–13, N.D.C.C., quoted above. However, the statute itself contains the answer to the argument. It indicates that good moral character can be negatived only by proof of a conviction, misstatement, or misrepresentation of fact in connection with the application or a prior (not an inference of a possible future) violation of professional standards.

In *Grogan v. State Board of Bar Examiners,* 78 N.M. 603, 435 P.2d 433 (1967), the Supreme Court of New Mexico reversed the Board of Bar Examiners' denial of admission on motion of an attorney because the denial was based on future possibilities which were unrelated to the qualifications specified in the rule authorizing such admission. The court there stated:

"There is nothing in the rule authorizing the examiners to anticipate what an attorney may or may not do in his future practice, if he is admitted. Thus the board has exceeded its powers and its discretion." 78 N.M. at 604, 435 P.2d at 434.

The Supreme Court of Connecticut, in *Potter v. Board of Selectmen, Town of New Milford,* 166 Conn. 376, 349 A.2d 844 (1974), held that refusal to grant a license to operate a mobile-home park on the ground that the applicant, after being granted a license, may fail to comply with the ordinances governing such operations, was improper. The court held:

"The ordinance does not, . . . authorize the board to deny an application for a license which complies with [the ordinance] on the ground that once the license has been granted, the licensee may fail to comply with those provisions of the ordinance which specify the conditions of mobile home park operation. Other means of enforcing the provisions governing mobile home park operation are specified elsewhere in the ordinance." 166 Conn. at 379, 349 A.2d at 846.

It is important to note here that the North Dakota Legislature, in 1973, subsequent to our decision in *State Bd. of Archit. v. Kirkham, Michael & Assoc., Inc., supra,* amended Section 43–03–20, N.D.C.C., entitled "Revocation of registration," so as to authorize the Board to revoke the certificate of registration of an architect who "has allowed nonregistered persons or entities to practice as an architect by the device of permitting his name or stamp to be placed upon drawings, or other contract documents, not prepared by him or under his direct supervision; . . ." Sec. 43–03–20, subsec. 3. The 1973 Legislature also amended Section 43–03–13, dealing with qualifications, and Section 43–03–15, dealing with the necessity of an examination, but chose not to include in either section any provision which could be applied to disqualify an applicant due to his employment with a corporation. This action indicates that the Legislature intended to regulate and police the practice of architecture by employees of corporations through enforcement of the statutes regarding revocation of registration [Section 43–03–20] and criminal penalties [Section 43–03–21].

If Guariglia is licensed and subsequently violates the statute as to corporate practice, the Board has ample authority to proceed under these statutes.

The Board argues that it has the authority to require, as a condition of registration, that an applicant agree to practice architecture legally in North Dakota. In this case the Board did not ask for any such assurance from Guariglia until after it had denied him a license. The question, therefore, is not properly before us in this case. However, we note that the United States Supreme Court has upheld as constitutionally valid the requirement that an attorney take an oath that he will support the State and Federal Constitutions as a condition of admission to practice law. Such a requirement has been found to be properly related to the fitness and mental capacity of applicants to practice in the legal profession. See *Law Students Research Council v. Wadmond,* 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971); *In re Griffiths,* 413 U.S.

717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). If the Legislature had imposed a requirement of an advance pledge not to violate the prohibition against corporate practice, the question before us would be different, and the answer might also be different. But there is no such requirement.

Affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.