Shirley CAMPBELL, Plaintiff
and Appellant,

v.

WISHEK PUBLIC SCHOOL DISTRICT, Le-
Roy Burnstad, Alvin Buck, Eugene Wiest,
Ben Woehl and John Frank, Individually
and as members of the School Board of
Wishek Public School District, Defendants
and Third-Party Plaintiffs and Respond-
ents,

v.

Leonard MOORE, Third-Party Defendant
and Respondent.

No. 8343.

Supreme Court of North Dakota.

March 30, 1967.

Rehearing Denied June 2, 1967.

841

Rausch & Chapman, Bismarck, for plaintiff and appellant.

Kretschmar & Kretschmar, Ashley, for defendants, third-party plaintiffs and respondents.

TEIGEN, Chief Justice.

This is an appeal from a judgment dismissing plaintiff's action for damages for alleged breach of her teacher's contract. The case was tried to the court without a jury. Trial de novo is demanded in this Court.

The plaintiff brought this action for damages for alleged breach of contract to teach in the elementary school of the defendant school district. Each of the other defendants was a member of the school board of the defendant school district. The plaintiff also sought exemplary damages against the defendants, but the plaintiff advises in her brief that no appeal is taken from the judgment dismissing the plaintiff's cause of action for exemplary damages. For this reason this question will not be considered by us.

The judgment dismissing the plaintiff's action was entered upon an order granting defendants' motion for a dismissal of the action made at the close of the plaintiff's case in chief. The trial court granted a motion to dismiss on the ground that the plaintiff had not established a prima facie case. The only evidence of record is that produced by the plaintiff and the cross-examination of the plaintiff and her witness. We will review the evidence to determine whether or not the plaintiff has established a prima facie case.

The plaintiff and the defendant school district entered into a written contract in April of 1963, whereby the plaintiff was engaged to teach the fourth grade in the defendant school district. The plaintiff had taught for three years previous in the district. The contract provided that the plaintiff was to teach for a term of nine months, beginning the first day of September 1963, for which services the school district agreed to pay her an annual salary of $4,150.00, payable in nine equal installments. Because the plaintiff was a married woman, the following provision was placed in the contract:

Provided further that in the event said teacher becomes pregnant, this contract may be terminated and cancelled by either party after the fourth month of pregnancy by giving written notice to the other.

The plaintiff taught under this contract through January 28, 1964, and was paid through that date in accordance with the contract terms. In December 1963, the plaintiff advised the superintendent of the school in which she taught that she was pregnant. She asked him to inform the school board of this fact, and to request on her behalf that she be granted a leave of absence commencing January 31, 1964. She testified that she did not know whether she was in her fourth month of pregnancy at that time. Later the superintendent advised the plaintiff that he had taken her request to the school board at a board meeting, and that the board granted her request for a leave of absence commencing January 31, 1964. She also testified that under normal conditions her baby would have been born in May 1964, and she could not have returned during the term for which she was hired. However, she entered the hospital on the evening of January 28, 1964, and some time during that night a premature baby was born which weighed two pounds and four ounces. It lived only

eight and one-half hours. The plaintiff was released from the hospital on February 6, 1964, and spent a week in her home convalescing. She testified that she then felt ready to return to teaching duties. She contacted the superintendent of the school and advised him that she would be ready to return about February 12 or 13. The superintendent called the plaintiff on February 12, 1964, and advised that he had attended a school board meeting the night before at which the school board had decided not to reinstate her. Under date of February 12, 1964, the clerk of the school board wrote the plaintiff a letter, a copy of which was introduced as an exhibit, in which he stated, in part:

> As you know, you advised the school board through Mr. Moore that you would be quitting teaching on January 31, 1964. Relying on that advice, the school board hired another teacher to teach the remainder of the school term. Therefore, they are unable to consider reinstating you for the remainder of the school term.

> You will recall that your contract provided that in the event you became pregnant, the school board could terminate your contract. Since you advised us that you were going to quit, any action on our part to terminate the contract is probably unnecessary. However, you may regard this letter as official notice that whatever rights you had under such contract are terminated because of your pregnancy.

On February 18, 1964, the plaintiff sent written notice to the school board informing them that she stood ready and willing to fulfill her contract. At the invitation of the school board, plaintiff met with them on February 21, 1964. At this meeting they discussed her request for reinstatement, which was denied. The plaintiff continued to live in the community and did some substitute teaching in the defendant school district until the end of April 1964, when she moved with her family to the state of Montana. At the time of the trial she was living in New Mexico.

The plaintiff testified that although the leave of absence which she requested was for no specified time, if things had gone normally her child would have been born in May 1964, which would not have permitted her to return to her teaching duties in the 1963–1964 term.

Plaintiff testified in support of her claim for damages that she had been paid between $200 and $300 for substitute teaching, the exact amount of which she could not recall; that, however, she had received total compensation from the school district in the amount of $2,647.83, and that the difference between that and the amount contracted for was $1,502.17, which is the amount of damages prayed for exclusive of exemplary damages. No proof was adduced in support of exemplary damages. Furthermore, we believe we should point out that our statute allowing recovery of exemplary damages is limited to a breach of an obligation not arising from contract. Section 32–03–07, N.D.C.C. Under statutes of this type exemplary damages are generally limited to recovery in an action growing out of a breach of contract permeated with tort, where the injured party elects to waive the contract and recover in tort. 22 Am.Jur.2d, Damages, Section 245. Here the plaintiff has not waived the contract.

The record made by the plaintiff in this case we find establishes that a contract was entered into for a term of nine months, but the plaintiff carried out her duties under the contract through January 28, 1964, a period of about five months; that plaintiff became pregnant while the contract was in force and requested a leave of absence without pay on the assumption that she would have a normal pregnancy; that although at the time she requested the leave of absence she did not know when her child would be born, she later learned that if the pregnancy had been normal the child would be born in May of 1964, and under those

circumstances she could not have returned to her teaching duties during the contract year. The record establishes that the school board and the officers of the defendant school district granted the plaintiff's request for a leave of absence effective January 31, 1964, and hired another teacher to replace the plaintiff for the remainder of the school term.

Do these facts establish the plaintiff's claim?

 The relationship between a teacher and the school district is purely contractual. Seher v. Woodlawn School District No. 26, 79 N.D. 818, 59 N.W.2d 805; Mootz v. Belyea, 60 N.D. 741, 236 N.W. 358, 75 A.L.R. 1347. In the absence of statutory provisions to the contrary, teacher contracts are governed by the same rules as ordinary contracts of employment. Section 9-07-01, N.D.C.C.; Seher v. Woodlawn School District No. 26, supra.

 The plaintiff's complaint alleges the contract, and that it contained the pregnancy clause. It also alleges that plaintiff became pregnant, and in December advised the superintendent of schools, who in turn informed the school board of this fact; that thereafter, on the 14th day of January 1964, the defendant school board met and granted the plaintiff a leave of absence during her pregnancy; that the board determined to hire another teacher during such leave of absence; and that they hired another teacher without the benefit of written contract, on a temporary basis. Plaintiff then alleges that she continued teaching until January 28, 1964, when she suffered a miscarriage, whereupon the substitute teacher was engaged to teach until February 17, 1964, when the plaintiff was to return to her position, but that between January 28, 1964, and February 17, 1964, the defendants, acting in concert and in an arbitrary and capricious manner and with wrongful intent to deprive the plaintiff of her contractual rights and confer the same upon the substitute teacher who was related by marriage to one of the members of the

board, did attempt to declare the said plaintiff's contract terminated on the basis of the prior existing pregnancy. She also alleges that the defendant school board members were fully advised of the facts surrounding the alleged termination of the plaintiff's contract, and that each and every one acquiesced in and willfully became a party to the wrongful, capricious and arbitrary act, in addition to the usual allegations of ability and willingness to perform her duties under the contract. The defendants by their answer have admitted the contract, including the pregnancy clause; that the superintendent of schools informed them at the January 14, 1964 meeting of the school board that the plaintiff was pregnant and of her request for a leave of absence; that the board granted the requested leave of absence due to pregnancy, which was for the balance of the 1963–1964 school year; and that the board hired a substitute teacher to teach in the plaintiff's position for the remainder of the school term. The defendants deny they had knowledge that the plaintiff suffered a miscarriage, or that they acted in concert in an arbitrary and capricious manner or with any wrongful intent. The burden of proof was on the plaintiff to establish the truth of her contentions as alleged. Goetz v. Merchants' Bank of Rugby, 23 N.D. 643, 138 N.W. 10. An examination of the record discloses that it is entirely devoid of proof that the substitute teacher was hired without the benefit of contract, on a temporary basis, and that an arrangement was made by the defendants to engage the substitute teacher to teach until February 17, 1964, when the plaintiff was to return to her position. There is no evidence that between the 28th day of January 1964 and the 17th day of February 1964 the defendants acted in concert or in an arbitrary and capricious manner or with wrongful intent to deprive the plaintiff of her contractual rights and to confer the same upon the substitute teacher, nor is there any evidence that the substitute teacher was related by marriage to one of the members of the school board. On the other hand, it appears to us that the

evidence establishes that an oral agreement was made whereby the plaintiff was granted a leave of absence commencing on January 31, 1964, to continue for the duration of a normal pregnancy, which in accordance with plaintiff's testimony would not have terminated until the month of May 1964. There is no evidence nor does the plaintiff contend that a subsequent agreement was made. Rather it appears she requested a reinstatement and this was denied by the school board. It also appears that the plaintiff became pregnant either in September or October of 1963, and had been pregnant for a period of at least four months prior to February 12, 1964, when the defendant school board decided to terminate the teacher's contract under the pregnancy clause contained therein.

For the reasons stated, we affirm the judgment of dismissal of the action.

STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.

PAULSON, J., not being a member of the Court at the time of submission of this case, did not participate.