**FARGO EDUCATION ASSOCIATION,**
**Plaintiff and Appellee,**

v.

**FARGO PUBLIC SCHOOL DISTRICT**
**NO. 1, a public corporation,**
**Defendant and Appellant.**

**Civ. No. 9168–A.**

Supreme Court of North Dakota.

March 13, 1980.
Rehearing Denied April 21, 1980.

Chapman & Chapman, Bismarck, for plaintiff and appellee; argued by Daniel J. Chapman, Bismarck.

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for defendant and appellant; argued by Jack G. Marcil, Fargo.

PEDERSON, Justice.

This appeal by the School District from an amended judgment declaring certain items to be "proper subjects of negotiation" under Ch. 15–38.1, NDCC, is a sequel to *Fargo Ed. Ass'n v. Paulsen,* 239 N.W.2d 842 (N.D.1976).

In that previous case, the Association petitioned for a writ of mandamus (Ch. 32–34, NDCC) to compel the School District to negotiate the following items:

(1) Class size.

(2) Procedures for reduction in force.

(3) Policies for individual and professional leave.

(4) Procedure for establishing curriculum with teacher input.

(5) Teacher evaluation policies.

(6) Teacher transfer procedures.

(7) Grievance procedure, including binding arbitration.

(8) Binding arbitration in negotiations.

(9) Schedule for work year.

The trial court held that a legal question of substance existed as to legal duty to act and that, therefore, mandamus was not the proper remedy. We applied an "abuse of discretion" standard of review and affirmed the denial of the writ. At the same time we said that we recognized some need for interpretation of the statute on this matter. *Fargo Ed. Ass'n v. Paulsen, supra.*

This action was then brought for a declaratory judgment seeking an interpretation that each of the nine items "are subject to negotiation within the terms and meaning of the statute." From the briefs and argument presented in this court, it appears that the parties interpret the district court order to *require* negotiation on each of the nine items. For the purpose of discussion

we will, accordingly, consider the declaratory judgment to obligate, not merely permit negotiation.

The Teachers' Representation and Negotiation Act (Ch. 15–38.1, NDCC) was enacted as Chapter 172, S.L. 1969, and the only amendments thereto were made in 1977, creating a new section to provide for payroll deduction of dues (§ 15–38.1–11.1, NDCC, § 1, Ch. 166, S.L. 1977), and in 1979 the amendments of § 15–38.1–04 relating to compensation of commission and factfinders, § 15–38.1–05 relating to powers of the commission (which actually made no change in the statute), and § 15–38.1–13 relating to impasse procedures. (§§ 1, 2 and 3, Ch. 232, S.L. 1979.) None of these changes has involved matters of concern in this case.

The sparse legislative history available discloses that the Act was drafted by Attorney Bruce M. VanSickle (now the United States District Judge for the District of North Dakota)[1], and was supported by the North Dakota Parent Teachers Association, the North Dakota Education Association, and the North Dakota School Boards Association. The title stated that it was an Act:

> "To provide procedures for representative organizations of public school teachers to negotiate with school boards with reference to employer-employee relations; to establish procedures to be used in the event of disagreement; and to establish an education factfinding commission."

See *Barnes Cty. Ed. Ass'n v. Barnes Cty. Sp. Ed.*, 276 N.W.2d 247, 251 (N.D.1979).

A significant provision in the Act is the stated purpose in § 1, Ch. 172, S.L. 1969, now § 15–38.1–01, as follows:

> "In order to promote the growth and development of education in North Dakota which is essential to the welfare of its people, it is hereby declared to be the policy of this state to promote the improvement of personnel management and relations between school boards of public school districts and their certificated employees by providing a uniform basis for recognizing the right of public school certificated employees to join organizations of their own choice and be represented by such organization in their professional and employment relationships with the public school districts."

The Association relies upon a construction of the language in §§ 15–38.1–08 and 15–38.1–09, 15–38.1–12 and 15–38.1–13 in its argument that each of the nine items are within the scope of "terms and conditions of employment" or "employer-employee relations," which the School District has a duty to negotiate in good faith.

Section 15–38.1–08 uses the phrase "matters of employee relations" in describing matters in which organizations have a right to represent teachers.

Section 15–38.1–09 provides: "The scope of representation shall include matters relating to terms and conditions of employment and employer-employee relations, including, but not limited to salary, hours, and others terms and conditions of employment."

Section 15–38.1–12 imposes upon both parties a "duty to meet at reasonable times at the request of either party and to negotiate in good faith with respect to: a. Terms and conditions of employment and employer-employee relations. . . ."

Section 15–38.1–13 refers to impasse procedures after a reasonable period of "negotiation regarding terms and conditions of employment or employer-employee relations, . . ."

The School District concedes that policies for individual leave (a part of item (3) above), grievance procedure, including binding arbitration (item (7) above), and binding arbitration in negotiations (item (8) above) are acceptable items for negotiation. It relies primarily upon § 15–38.1–14(2) in its argument that all of the other items are not negotiable. Section 15–38.1–14(2) provides:

---

1. Of peripheral interest only, in a case involving the validity of a negotiated provision of a teacher-school board contract, *Driessen v. Freborg*, 431 F.Supp. 1191 (D.N.D.1977), Judge

VanSickle concluded that assistance from the court is not available to enforce provisions that gravely violate paramount requirements of public interest.

"2. Nothing contained herein is intended to or shall conflict with, contravene, abrogate, or diminish the powers, authority, duties, and responsibilities vested in boards of education by the statutes and laws of the state of North Dakota."

Finding ambiguities in Chapter 15–38.1 is not a new experience for this court. We did so in *Fargo Ed. Ass'n v. Paulsen, supra,* as well as in *Barnes Cty. Ed. Ass'n v. Barnes Cty. Sp. Ed., supra,* and *Dickinson Ed. Ass'n v. Dickinson Public Sch.,* 252 N.W.2d 205, 211 (N.D.1977). In *Dickinson Public Sch. Dist. No. 1 v. Scott,* 252 N.W.2d 216, 219 (N.D.1977), we said: "We are required to construe together all statutes relating to the same subject matter so as to harmonize them, if possible, and give full force and effect to true legislative intent."

With reference to the compatibility of § 15–38.1–14(2) and the rest of the chapter, Justice Vogel wrote in his dissent to *Edgeley Ed. Ass'n v. Edgeley Pub. Sch., Etc.,* 231 N.W.2d 826, 835 (N.D.1975), that except for § 15–38.1–14(2), Chapter 15–38.1 is "consistent, clear, and comprehensible," but when § 15–38.1–14(2) is included, "it is either a nullity or incomprehensible." That dissent called Chapter 15–38.1 "a statute relating to collective bargaining." We do not cite Justice Vogel's dissent to indicate that the majority now agree with him, but to illustrate the extent of the perceived ambiguity in the statute.[2]

■ We hold that Chapter 15–38.1, in its present form, is not a collective bargaining statute within the terms of the Labor Management Relations Act and determinations of the National Labor Relations Board. As the majority said in *Dickinson Ed. Ass'n v. Dickinson Public Sch., supra,* 252 N.W.2d at 213:

"Case law on collective bargaining and good faith negotiations arising out of federal or sister state Acts which have been called to our attention are not of much assistance in this instance because of dissimilarities between, or absence of, key provisions in the respective Acts. Neither is case law arising out of labor disputes in the private sector, as distinguished from the public sector, of any significant assistance."[3]

For an analogous discussion of difficulties encountered in attempting to apply the reasoning of federal labor law cases to labor relations between public employees and the State and its agencies, see *City of Minot v. General Drivers & Helpers U. No. 74,* 142 N.W.2d 612 (N.D.1966).

It appears that the School District is not unwilling to communicate or confer with the Association or with individual teachers regarding any of the nine items, and the record indicates that communications and conferences have occurred. See definition of "negotiate" in *Fargo Ed. Ass'n v. Paulsen, supra,* and comment in *Edgeley Ed. Ass'n v. Edgeley Pub. Sch., Etc., supra,* which refer to communications, meetings, discussions, compromise, listening, and friendly persuasion.

The School District's disdain is directed at labeling the communication a "negotiation" because of the fear that if a suggestion from the Association is completely rejected—for example, on the grounds that there would be a conflict with, contravention, abrogation, or diminishing of the School District's powers, authority, duties, and responsibilities—the Association will charge "bad faith" in the negotiations. If, on the other hand, the School District agrees to any proposal, or part thereof, made by the Association during "negotiation," that agreement can be required to be incorporated into the written contract, and all of the grievance procedures and arbitration (if the agreement so provides) could ultimately abrogate

---

2. A recent case analysis in 54 N.D.L.Rev. 294 (1977) concludes that because of this court's failure to give "meaningful interpretation" to the Teachers' Representation and Negotiation Act, we have returned teacher-school board relations to their pre-1969 status.

3. The majority of this court, in *West Fargo Public Sch. Dist. v. West Fargo Ed.,* 259 N.W.2d 612 (N.D.1977), applied some principles from federal case law as persuasive on the subject of arbitration of disputes arising out of teacher-school district disputes.

School District prerogatives, which is prohibited by § 15–38.1–14(2).

The record indicates that there are School District policies which invite teacher input into establishment of curriculum, for example. But there are examples, also, of the bypass of the opportunity for input and no redress for those aggrieved.

A statute which permits or encourages problems to develop as occurred here between the Fargo Education Association and the Fargo Public School District No. 1, with the need for two trials in the district court and two appeals to this court, appears to shriek for legislative attention. Professor Michael J. Polelle of De Paul University College of Law, writing on the subject of collective bargaining and the public employee in 48 N.D.L.Rev. 41, 54 (1971), said:

"Only the legislature is equipped to deal with the scope of the problem involved. The precise machinery of negotiation to be established in a state must be sufficiently flexible to permit a form of collective negotiation fitted to the needs of the parties. Existing legislation in the United States provides an essential base by often providing for collective bargaining, representation elections, mediation, and factfinding. However, it often provides no guidance concerning the identity of the public employer in a given situation."

■ Courts should not and cannot stand between, and provide remedies for professional teachers and school boards on such matters. Except for our traditional judicial role, we are bound to remove ourselves from providing solutions when employee-employer relationships deteriorate in our schools.

■ The legislative committees were told at hearings on the Teachers' Representative and Negotiation Act by the Executive Director of the North Dakota School Boards Association that:

"In case the parties could not agree on the 'subject of negotiations' it is possible under this bill that an impasse be declared and this question be decided by this Fact Finding Commission."

He reported that 57% of the school administrators who responded to his questionnaire thought that this was acceptable. The record of the legislative committee proceedings does not disclose that the representatives of the North Dakota Parent Teachers Association and the North Dakota Education Association who were present raised any objection to the School Boards Association's interpretation of the proposed bill. Under the circumstances, we conclude that the statement is of some interest in our search for legislative intent. As this court has stated, there are a number of rules of interpretation but all are subservient to a determination of intent. See *McCarney v. Meier,* 286 N.W.2d 780 (N.D.1979), and *Newman v. Hjelle,* 133 N.W.2d 549 (N.D.1965). It is proper to resort to legislative history in attempting to construe an ambiguous act. *Rausch v. Nelson,* 134 N.W.2d 519 (N.D. 1965).

■ Because of the ambiguity in the Act, it is impossible for courts to mandate negotiation on items other than (1) salary, (2) hours, (3) formulation of an agreement, (4) binding arbitration, and (5) interpretation of an existing agreement. Section 15–38.1–12(1). That is not to say that negotiations may not include any item that relates directly or indirectly to terms and conditions of employment and employer-employee relations as may be agreed upon. It is up to the parties to negotiate what the "subjects of negotiation" will be. If none can be agreed upon, an impasse may be deemed to exist and the matter resolved by mediation, if agreed to, or the fact-finding process may be utilized as specified in § 15–38.1–13(2)(a) or (b). This is consistent with the position we referred to in *Dobervich v. Cent. Cass Pub. Sch. Dist. No. 17,* 283 N.W.2d 187, 193 (N.D.1979), that under the doctrine of separation of powers and § 94 of the North Dakota Constitution, a position of restraint is preferred for the courts. This court has often said that school boards have only such powers expressly or impliedly granted by statute, e. g., *Myhre v. School Board of North Cent. Pub. Sch. Dist.,* 122 N.W.2d 816 (N.D.1963).

The extent to which the Legislature intended to permit or require the school boards to bargain away their power is not clear.

The district court judgment entered in this case does not mandate negotiations under the Act but merely permits negotiation on each of the nine items involved. The judgment is, to that extent, affirmed. Because a question of public concern is involved, no costs shall be allowed on this appeal.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.