Melvin L. WEBSTER, Warren A. Henke, Arnold M. Lahren, Nancy Olsen, Ginger Newton, Karla Smart and Randall Lee Boor, Plaintiffs and Appellants,

Paul H. Bodmer, Plaintiff,

v.

BISMARCK PUBLIC SCHOOL DISTRICT NO. 1, a public corporation, Defendant and Appellee.

Civ.No. 10130.

Supreme Court of North Dakota.

July 1, 1982.

Chapman & Chapman, Bismarck, for plaintiffs and appellants; argued by Daniel J. Chapman, Bismarck.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendant and appellee; argued by Albert A. Wolf, Bismarck.

PEDERSON, Justice.

The principal question presented upon this appeal is: may an issue which has been discussed in pre-contract negotiations and rejected by one of the negotiating parties, thus preventing its inclusion in the master contract, be later raised in judicial proceedings? We conclude that, ordinarily, it may not. We further conclude that mandamus is not available under the circumstances of this case. The judgment is affirmed.

The appellants in this case (hereinafter referred to as Webster) are individual teachers employed by the Bismarck Public School District (School District) to teach at Bismarck Junior College. These teachers were employed for the nine-month school year. It has been the custom in the past to pay teachers with a nine-month contract on a twelve-month basis. In the spring of 1980, negotiations were initiated to draw up an employment contract between the teachers and the School District for fiscal year 1980–81. During these negotiations, the teachers were represented by Professional Negotiations Association (PNA). One of the issues PNA presented to the School District was the desire of some teachers employed on a nine-month contract to have the option to be paid on a nine-month basis. The School District refused to concede on

this issue, however, and, after lengthy discussion, the matter was dropped.

Later that summer, a federal mediator requested both parties to disclose remaining issues to be negotiated. The "option" question was not one of those submitted to the mediator. The master contract between the two negotiating parties was subsequently executed on September 9, 1980. It did not prescribe any particular schedule of payments.

Although some of the teachers objected to the absence of a provision in the master contract allowing them the option of being paid on a nine-month schedule, the master contract was, nevertheless, approved by the teachers. The individual contracts sent to the teachers, however, included a provision that their salary payments would extend over a twelve-month period.

This mandamus suit was then brought by the individual teachers to require the School District to pay their salaries concurrently with their period of employment.

The district court held that because the matter had been brought up in pre-contract negotiations it could not again be brought up as a subject of litigation by individual members of the bargaining unit. The teachers' complaint was then dismissed with prejudice.[1]

■ The federal labor relations laws do not apply to public employees and, therefore, the issue to be resolved in this case is a question of state law. Chapter 15–38.1, NDCC, sets out the procedures for collective bargaining between teachers and school boards. *See Fargo Ed. Ass'n v. Paulsen*, 239 N.W.2d 842 (N.D.1976).

In this instance, Webster objected to the absence of a provision allowing teachers the option to be paid concurrently with their period of employment. Section 15–38.1–08, NDCC. Nevertheless, the master contract was ratified by a majority of the members in their appropriate negotiating unit.

Webster argues that because the master contract did not refer to any time schedule for payments, then common law and §§ 34–14–02 and 34–14–04.1, NDCC, require teachers employed on a nine-month contract to be paid on a nine-month basis, unless they otherwise agree. These statutes, however, are not clearly applicable. No common law right has been identified as applicable.

■ Although the master contract did not mention a schedule for outlay of payments, it was not, under the circumstances, improper for the School Board to adhere to past custom and practice.

". . . the labor contract—burdened with the task of regulating a complex work community on a continuing basis—cannot reduce to writing each and every norm or rule that has been developed over time to govern the parties' activities. It is common to treat the collective bargaining agreement as comprised not only of the written and executed document but also of plant customs and industrial practices as well as of informal agreements and concessions made at the bargaining table but not reduced to writing." R. Gorman, *Basic Text On Labor Law*, at 541 (1976).

■ After a party attempts but fails in contract negotiations to obtain a specific provision in an agreement, in order to show entitlement to a writ of mandamus from the courts it must be shown that there is a clear legal right to that which is sought. *Fargo Ed. Ass'n v. Paulsen, supra; Fargo Ed. Ass'n v. Fargo Public Sch. Dist.*, 291 N.W.2d 267 (N.D.1980); and §§ 32–34–01 and 32–34–02, NDCC. No such clear legal right has been shown.

The judgment is affirmed.

ERICKSTAD, C.J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

1. This matter was before the district court on two separate occasions. The court held the first proceedings in abeyance while the teachers exhausted all possible administrative remedies. When the issue could not be resolved administratively, then it was brought once again before the court.

VANDE WALLE, Justice, concurring specially.

I concur in the conclusion reached by Justice Pederson in the majority opinion. In the appellants' argument it was suggested that the school district refused to negotiate the method of payment because the item was not a subject of mandatory negotiation as a result of this court's decision in *Fargo Ed. Assn. v. Fargo Public Sch. Dist.*, 291 N.W.2d 267 (N.D.1980). In that decision we stated:

> "Because of the ambiguity in the Act [Chapter 15–38.1, N.D.C.C., Teachers' Representation and Negotiation Act], it is impossible for courts to mandate negotiation on items other than (1) salary, (2) hours, (3) formulation of an agreement, (4) binding arbitration, and (5) interpretation of an existing agreement." 291 N.W.2d at 271.

If, in fact, the school district had refused to negotiate the matter, as the term "negotiate" has been defined by this court in *Fargo Ed. Assn. v. Paulsen*, 239 N.W.2d 842 (N.D.1976), I would vote to reverse because I believe the manner of payment of salary is encompassed within the term "salary" which this court said is a subject of mandatory negotiation. Section 15–38.1–09, N.D. C.C., requires the scope of negotiations to specifically include salary, and a construction which would limit the term "salary" only to amount as opposed to manner and method of payment would be too restrictive.

As Justice Pederson has noted, however, the matter was presented to the school district as a subject of negotiation by the teachers and, although the school district refused to concede on the issue, it was only after lengthy discussion that the matter was dropped. In *Fargo Ed. Assn. v. Paulson, supra,* Justice Sand, writing for the court, stated that the term "negotiate":

> "... simply means to present proposals and offer counterproposals, to discuss proposals, to carry on a dialogue, to exchange ideas, all for the purpose of persuading or being persuaded by logic and reasoning. This means that the parties must also be willing to listen and not only talk. It is the art of friendly persuasion. The persuasion can result in an agreement and understanding or a settlement of issues. It does not mean that an agreement must be reached. Neither side is required by law to surrender or abrogate any of its duties and responsibilities. Neither does it mean formal or binding arbitration." 239 N.W.2d at 847.

I am persuaded that in this instance the school district negotiated the issue with the teachers but refused to agree to another method of payment of salary for that school year. In the administrative procedure which the majority opinion refers to in a footnote, the Education Factfinding Commission established by Chapter 15–38.1, N.D.C.C., refused to consider the matter because it had been the subject of negotiations and, when no agreement was reached, it was dropped. Although the negotiations relative to the method of payment of salary did not achieve the result the appellants desired, the issue was nevertheless negotiated.