1998 ND 219

**Murdick SMITH, Plaintiff and Appellant,**

v.

**LAND O'LAKES, INC., d/b/a Bridgeman Dairy and d/b/a Country Lake Foods, Inc., Defendant and Appellee.**

Civil No. 980101

Supreme Court of North Dakota.

Dec. 22, 1998.

Michael S. McIntee, of McIntee Law Firm, Towner, for plaintiff and appellant.

Jon W. Backes (appearance), of McGee, Hankla, Backes & Dobrovolny, Minot, and Ellen G. Sampson (argued), Minneapolis, MN, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Murdick Smith appealed from a summary judgment dismissing his complaint against his former employer, Land O'Lakes, Inc., d/b/a Bridgeman Dairy and d/b/a Country Lake Foods, Inc., (collectively referred to as Land O'Lakes), for damages arising from the termination of his employment. We hold Smith failed to raise a genuine issue of material fact to support his claim Land O'Lakes made false statements to him during a reduction in force by Land O'Lakes. We affirm.

[¶ 2] Smith initially began working for Land O'Lakes in 1962. In 1977, he voluntarily quit his job. In 1980, Land O'Lakes rehired Smith, and he eventually worked as a dock loader on the night shift at Land O'Lakes' Minot facility.

[¶ 3] Smith was a member of the Teamster's Union Local 123. Land O'Lakes and the Union executed Articles of Agreement, which outlined the terms of Smith's employment relationship with Land O'Lakes. The agreement gave management the exclusive right "to determine the size of the work force; to locate or remove any portion of the facilities and to abandon any operation at any time it deems appropriate." The agreement also said seniority shall be broken only by discharge, voluntary quit, or more than one year layoff, and specified "[s]eniority shall govern in all cases of layoffs and recalls." The agreement included a grievance procedure and arbitration provision that stated "[a]ny controversy arising over the interpretation of or adherence to the terms and provisions of this Agreement shall be settled" according to a three-step grievance procedure culminating in formal arbitration.

[¶ 4] In 1995, Land O'Lakes decided to transfer its Minot milk production operation to its Bismarck plant. As a result, some positions at the Minot facility were eliminated by a reduction in force. After consulting with the Union, Land O'Lakes posted an April 18, 1995 notice formally notifying its employees certain positions were going to be eliminated at the Minot plant. The notice listed "positions eliminated" and "positions to be filled." Four production and three loader positions, along with the names of the persons currently filling those positions, were listed as "positions eliminated." The notice did not distinguish between loaders assigned to the day shift and loaders assigned to the night shift. The "positions eliminated" included the loader position held by Smith. According to Land O'Lakes, seven loader positions were not listed on the notice as "positions eliminated," and all of the seven

individuals holding those positions had more seniority than any of the three loaders holding the "positions eliminated." Before the reduction in force, there were two night loaders, Smith and Myron Hegre, and after the reduction in force, there were also two night loaders, Hegre and Kenneth Wolf. Wolf, who had the least seniority of the loaders retaining their jobs, had two more years seniority than Smith.

[¶ 5] The April 18, 1995 notice also listed six "positions to be filled" along with the names of the persons currently filling those positions. The notice explained:

> Personnel whose positions will be eliminated will be interviewed on Friday morning, April 21, 1995, in order of their seniority as to their preference and qualifications for the positions that need to be filled. A Union representative will be present for all interviews.

[¶ 6] The individuals listed under "positions eliminated," including Smith, interviewed for the six jobs listed under "positions to be filled." All of the six individuals holding "positions to be filled" had less seniority than any of the seven individuals holding "positions eliminated." Smith was fifth in seniority among the seven persons holding "positions eliminated," and consequently he was the fifth person interviewed for "positions to be filled." When Smith met with a Land O'Lakes representative conducting the interviews, two positions remained to be filled—a loader/driver and a milk-tank driver. Smith chose the loader/driver position. The Land O'Lakes representative informed Smith the loader/driver position may be eliminated in the future. According to Smith, he took the position although he knew it was "a gamble."

[¶ 7] In May 1995, one of Land O'Lakes' customers decided to haul its own milk, and Land O'Lakes eliminated the loader/driver position chosen by Smith. Smith sued Land O'Lakes, alleging:

> 9. That [his] employment was terminated by [Land O'Lakes] in late May of 1995 and that such termination was not for improper or illegal conduct by [him].
>
> 10. On April 18, 1995, [Land O'Lakes] informed [Smith] and other employees that [Smith's] position as a loader would be eliminated.
>
> 11. That such information was fraudulent in that [his] position as a loader was in fact, not eliminated.
>
> 12. That as a result of the fraudulent and false information to [him], [he] was induced to transfer to another position.
>
> 13. That after such position transfer, the new position was terminated.
>
> 14. That as a result of the termination of the new position [Land O'Lakes] terminated [his] employment.
>
> 15. That the said employment agreement, as described above, provided for certain processes and procedures for the elimination of employees according to seniority; that [Land O'Lakes] failed to comply with such termination/elimination procedures.
>
> 16. That as a result of [Land O'Lakes'] false and fraudulent actions and in violation of the terms of the employment agreement, [he] has been damaged. . . .

Land O'Lakes denied making false statements to Smith and claimed he was terminated by a valid reduction in force.

[¶ 8] After extensive discovery, the trial court granted summary judgment dismissing Smith's action. The court ruled Smith had presented no evidence to show Land O'Lakes made any false statements to him. The court also ruled Smith did not have a "secure" loader position he could hold out against the world, and, under the collective bargaining agreement, he could be bumped from his job during a reduction in force by someone with more seniority. The court explained:

> It was common knowledge among the employees at Bridgeman Creamery in Minot that the plant was being downsized. The plan agreed to by the union-management Minot Management Team clearly stated that three loader positions were going to be eliminated. It further stated that [Smith], having less seniority, would be one of those who would lose that job, but having more seniority than some other employees, could bump one of them out of a job.

[¶ 9] The principles governing summary judgment have been well defined by our previous decisions. Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D.1996). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, and that party must be given the benefit of all favorable inferences which reasonably can be drawn from the evidence. *Id.*

[¶ 10] Although the party seeking summary judgment bears the initial burden of showing there are no genuine issues of material fact, the party resisting the motion may not simply rely upon the pleadings or upon unsupported, conclusory allegations. *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D. 1991). The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other documents containing testimony or evidence raising an issue of material fact. *Id.* Neither the trial court, nor an appellate court has a duty or responsibility to search the record for evidence opposing the motion for summary judgment. *Id.*

[¶ 11] Smith asserts the trial court erred in granting summary judgment because there were disputed issues of material fact. He claims the court erred in deciding Land O'Lakes did not make false and misleading statements that his night loader position would be eliminated when, in fact, it was not eliminated. He asserts if Land O'Lakes had not falsely informed him his night loader position would be eliminated, he would not have applied for another position and Land O'Lakes would have been required to keep

him as a night loader. The essence of Smith's argument is his night loader position was a "secure" position.

[¶ 12] Significantly, Smith's complaint alleged Land O'Lakes made fraudulent statements to him. Fraud must be proven by clear and convincing evidence, *State Bank of Kenmare v. Lindberg*, 471 N.W.2d 470, 474 (N.D.1991), and that higher burden of proof should have a corresponding effect on the judge when determining if a factual issue as to fraud exists. Therefore, when determining if a genuine factual issue as to fraud exists, the trial judge must bear in mind the actual quantum and quality of proof necessary to support liability. *Id.* If the evidence presented is of insufficient caliber or quantity to allow a rational finder of fact to find fraud by clear and convincing evidence, there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[¶ 13] During oral argument to this Court, Smith claimed there were ten loader positions before he was terminated and ten loader positions after he was terminated. Smith, however, has not cited any evidence in the record showing there were ten loader positions before and after he was terminated. Neither has he cited any evidence to show his night loader position was "secure" against other loaders with more seniority. A party resisting summary judgment must cite the court to relevant evidence in the record raising an issue of material fact. *Peterson*, 477 N.W.2d at 234. Smith has failed to comply with that requirement. The evidence in the record, viewed in the light most favorable to Smith, shows Land O'Lakes eliminated three loader positions in the order of least seniority of the person holding the position, and he was among the three least senior loaders. We conclude Smith failed to present evidence of sufficient caliber or quantity to allow a rational fact finder to find fraud by clear and convincing evidence. We therefore conclude he failed to raise a genuine issue of material fact to support his claim Land O'Lakes falsely and fraudulently informed him his night

loader position would be eliminated.[1]

[¶ 14] We affirm the summary judgment.

[¶ 15] SANDSTROM, NEUMANN and MARING, JJ., concur.

[¶ 16] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.

---

1. Because of our resolution of this issue, we acknowledge, but do not fully consider, Land O'Lakes' alternative arguments that Smith's claims are preempted by federal labor law and are barred by his failure to comply with the grievance procedure of the collective bargaining agreement. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (holding state law claim preempted by § 301 of Labor Management Relations Act only if application of state law requires interpretation of collective bargaining agreement); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220–21, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (holding state law claim substantially dependent upon interpretation of collective bargaining agreement must be dismissed for failure to use grievance procedure or as preempted by § 301 of Labor Management Relations Act).

Smith's claims are obviously based, in part, on a disagreement about the terms of the Articles of Agreement, which unambiguously provided seniority would control in cases of layoffs. Smith presented no evidence to show the reduction in force was based on anything other than seniority.

Moreover, the agreement specifically said resolution of "[a]ny controversy arising over the interpretation of or adherence to the terms and provisions of this Agreement shall be settled" according to a three-step grievance procedure culminating in formal arbitration. Smith did not identify evidence in the record to show he complied with the requirement for submitting a written grievance as required by the agreement.