2000 ND 92

**MANDAN EDUCATION ASSOCIATION, Plaintiff and Appellant,**

v.

**MANDAN PUBLIC SCHOOL DISTRICT NO. 1, Defendant and Appellee.**

No. 990354.

Supreme Court of North Dakota.

May 11, 2000.

Michael Geiermann of Rolfson Schulz Lervick & Geiermann Law Offices, Bismarck, for plaintiff and appellant.

Gary R. Thune (argued) and David E. Reich of Pearce & Durick, Bismarck, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] The Mandan Education Association ("MEA") appeals from the trial court's summary judgment. The trial court dismissed MEA's complaint based on failure to exhaust the administrative remedies in its negotiated agreements with the Mandan School Board. We affirm.

[¶ 2] On December 26, 1997, MEA sued the Mandan Public School District No. 1 ("School District"). The parties disputed the meaning of "unavailability" in Article VI, Section 6(B) of several negotiated agreements. Section 6(B) provides:

> At the elementary school level, a certified teaching personnel who is required to take his/her class because of the unavailability of a specialist teacher (art, music, physical education) shall be compensated at the rate of $[9–13, depending on the contract year] per each 50 minutes. A record of the total amount of time for each certified teaching personnel so affected will be kept by the respective elementary principals, with payment made to the certified teaching personnel at the end of each school year.

[¶ 3] On May 3, 1996, Allen Shreve, a Mandan elementary school teacher, delivered a letter to Principal Herman Schafer indicating music or physical education specialist teachers were unavailable during five 1995–96 school-year dates. Shreve requested additional compensation under Section 6(B). The specialist teachers were unavailable because of school musical rehearsals and "play day." Musical rehearsals and play day occur each school year, and teachers have never been paid additional compensation for the dates. On May 7, 1996, Schafer denied Shreve's request.

[¶ 4] On February 25, 1997, Shreve filed a grievance with Superintendent Kent Hjelmstad. Hjelmstad instructed Shreve to file the grievance first with his principal. On March 12, 1997, Shreve filed the grievance with Schafer. Schafer denied the grievance and Shreve appealed to Hjelm-

stad. On April 14, 1997, Hjelmstad issued a memorandum neither granting nor denying the grievance. Shreve appealed to the School Board. The School Board President arranged a committee meeting between MEA and School Board negotiators. On June 3, 1997, the committee interpreted the intent and definition of "unavailability," concluding play day and musical rehearsals were not included. However, the MEA negotiators did not agree the issue was resolved. On September 8, 1997, the School Board denied Shreve's grievance based on its interpretation of Section 6(B). On November 7, 1997, the denial was reconsidered and again denied. During the grievance procedure, both parties violated time limits provided in the negotiated agreements.

[¶ 5] MEA then filed this action. On January 23, 1998, the School District moved for summary judgment of dismissal. On August 23, 1999, the trial court dismissed MEA's complaint. The trial court determined MEA "waive[d] its rights by not timely pursuing the issue through the grievance procedure and that the case isn't properly before the Court because of the failure to exhaust administrative remedies." MEA appeals.

[¶ 6] This Court's standard of review for summary judgments is well settled.

> Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Smith v. Land O'Lakes, Inc.*, 1998 ND 219, ¶ 9, 587 N.W.2d 173. The evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Stanley v. Turtle Mountain Gas & Oil, Inc.*, 1997 ND 169, ¶ 6, 567 N.W.2d 345. Issues of fact may

become issues of law, if reasonable persons could reach only one conclusion from the facts. *Hurt v. Freeland,* 1999 ND 12, ¶ 9, 589 N.W.2d 551. *Kuntz v. Muehler,* 1999 ND 215, ¶ 4, 603 N.W.2d 43.

[¶ 7] MEA argues the trial court erred by granting summary judgment based on failure to exhaust administrative remedies because the School District did not object to the time limit violations and decided the grievance on the merits. We agree.

[¶ 8] Here, Schreve pursued a remedy at all administrative levels provided in the parties' agreement, both parties violated the time limits, neither objected to the violations, and the grievance was decided on the merits. A decision on the merits without raising time limit violations can waive the right to later assert time limit violations as a failure to exhaust administrative remedies. *See Bowden v. U.S.,* 106 F.3d 433, 438 (D.C.Cir.1997). Further, the parties' agreement provides, "[t]ime limits specified in the Agreement may be extended by mutual agreement." After viewing the evidence in a light most favorable to MEA, the School District waived the right to assert the time limit violations as a failure to exhaust administrative remedies, and the parties impliedly agreed to extend the limits by not objecting and deciding the grievance on the merits. The trial court incorrectly granted summary judgment based on a strict enforcement of the time limits and failure to exhaust administrative remedies. However, we will not set aside a correct result merely because the trial court assigned an incorrect reason, if the result is the same under the correct law and reasoning. *State Bank & Trust of Kenmare v. Brekke,* 1999 ND 212, ¶ 8, 602 N.W.2d 681.

[¶ 9] "Any question arising out of interpretation of an existent agreement" is to be negotiated in good faith between the district and the organization representing the teachers. *Williston Educ. Ass'n v. Williston Public School Dist. No. 1,* 483 N.W.2d 567, 571–72 (N.D.1992) (citing N.D.C.C. § 15–38.1–12 and *Fargo Education Association v. Fargo Public School District No. 1,* 291 N.W.2d 267 (N.D. 1980)). Teacher contracts are subject to the same statutory rules of interpretation as other contracts of employment. *Id.* at 570 (citing N.D.C.C. § 9–07–01 and *Campbell v. Wishek Public School District,* 150 N.W.2d 840 (N.D.1967)). The purpose of contract interpretation is to find the "mutual intention of the parties as it existed at the time of contracting." N.D.C.C. § 9–07–03. Whether a contract is ambiguous is a question of law independently reviewed on appeal. *Williston Educ. Ass'n,* at 570. If a contract is ambiguous, extrinsic evidence may be considered to determine its meaning. *Id.* A course of dealings and usage should be given effect in interpreting a contract ambiguity. *Id.* at 571 (citing N.D.C.C. § 9–07–20). Course of dealings is ordinarily a question of fact. *Kessel v. Western Sav. Credit Union,* 463 N.W.2d 629, 630 (N.D.1990). "However, where the evidence on the course of dealing is such that reasonable minds could draw but one conclusion, the question becomes one of law and summary judgment may be appropriate." *Id.*

[¶ 10] The School District argues the meaning of "unavailability" in Section 6(B) was negotiated in good faith. On June 3, 1997, a committee of MEA and School Board negotiators interpreted the intent and definition of "unavailability," concluding play day and musical rehearsals were not included. The School District also argues extrinsic evidence supports this interpretation of "unavailability." The parties' undisputed course of dealings and usage shows additional compensation has never been paid for play day or musical rehearsals. Further, MEA negotiators have not attempted to amend Section 6(B) or negotiate a favorable definition of "unavailability" since Shreve's 1996 complaint. *See Williston Educ. Ass'n,* at 572–73 (VandeWalle, J., concurring specially) (discussing a preference for good faith negoti-

ations under N.D.C.C. § 15–38.1–12). The definition of "unavailability" has been negotiated in good faith between the School Board and MEA, and the undisputed course of dealings and usage supports the definition.

[¶ 11] The trial court did not err by granting summary judgment because no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, and resolving any disputed facts would not alter the result. *See Smith*, 1998 ND 219, ¶ 9, 587 N.W.2d 173. The trial court's summary judgment is affirmed.

[¶ 12] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 13] I concur in the majority opinion. I write separately to note that the parties, the school district and the education association, did attempt to negotiate their differences in the contract. I applaud those efforts. I previously expressed dismay over the failure of a school district and an education association to use the negotiation act to resolve their differences over a contract. *Williston Educ. Ass'n v. Williston Public School Dist. 1*, 483 N.W.2d 567, 572–73 (N.D.1992)(VandeWalle, J., concurring specially). Here the parties did bring the issue to the bargaining table. The current negotiation statutes do not require that an agreement must be reached. *Fargo Ed. Ass'n v. Fargo Public Sch. Dist.*, 291 N.W.2d 267 (N.D.1980). Although the negotiations were not successful, the parties did attempt what I assume to be good-faith negotiations before this action was instituted. I hope the lack of success in this instance does not deter future attempts to resolve disputes through the negotiation process before resorting to legal action. The parties, not the courts, are in the best position to resolve these issues.

[¶ 14] Gerald W. Vande Walle, C.J.